OPINION OF THE COURT
 

 Simons, J.
 

 Petitioner Cipriano is a newspaper reporter. In the course of investigating administrative and fiscal procedures in the City of Albany, he was informed that certain members of the Albany police force were abusing the sick leave privileges accorded them by the collective bargaining agreement their union had negotiated with the city. He attempted to verify this information by a series of requests under the Freedom of Information Law (FOIL; Public Officers Law art 6) through which he sought access to police records containing "statistical or factual tabulations of data of the number of days and dates” on which certain named officers were absent from their scheduled employment. One of the requests concerned the records of Officer James Tuffey who was president of the local police officers’ union. Cipriano’s first request, for records of Tuffey’s absences during January 1983, was granted by the City Hall Records Access Officer and he was informed that Tuffey had not taken any sick time during January 1983. All Cipriano’s subsequent requests were denied.
 

 This proceeding challenges only one of those denials, that
 
 *565
 
 which denied Cipriano’s request for records containing statistical or factual tabulations of sick time taken by Officer Tuffey during the month of February 1983. The City Hall Records Access Officer denied access to those records, contending that disclosure would constitute an unwarranted invasion of personal privacy
 
 (see,
 
 Public Officers Law § 87 [2] [b]; § 89 [2] [b]). On administrative appeal, however, Cipriano’s request was denied because the records were confidential and, absent the officer’s consent or a court order, exempt from disclosure by Civil Rights Law § 50-a.
 

 Petitioners, Cipriano and his employer, then instituted this article 78 proceeding to compel the police department to release the record of Tuffey’s February sick time. Officer Tuffey moved to intervene in the proceeding and Special Term granted his request. The court thereafter examined in camera all records falling within the description of petitioners’ FOIL request and ruled that the "Lost Time Report” was not a personnel record within the meaning of Civil Rights Law § 50-a and that its release did not constitute an unwarranted invasion of personal privacy. Accordingly, it ordered release of the "Lost Time Report” in redacted form showing Tuffey’s absences from scheduled employment during February 1983. On appeal by the intervenor, the Appellate Division affirmed, but on different grounds. It found the information part of intervenor’s personnel record, but held, nonetheless, that the document should be released because Civil Rights Law § 50-a did not provide an exemption for FOIL requests, but rather was only intended to prevent a litigant in a civil or criminal action from obtaining documents in a police officer’s file that are not directly related to that action. The Appellate Division also agreed with Special Term that release of the "Lost Time Report” would not be an unwarranted invasion of personal privacy.
 

 There should be an affirmance. The redacted "Lost Time Report” is not exempt from disclosure by Civil Rights Law § 50-a and intervenor has failed to show that its disclosure would constitute an unwarranted invasion of privacy.
 

 The Freedom of Information Law expresses this State’s strong commitment to open government and public accountability and imposes a broad standard of disclosure upon the State and its agencies
 
 (see, Matter of Farbman & Sons v New York City Health & Hosps. Corp.,
 
 62 NY2d 75, 79). The statute, enacted in furtherance of the public’s vested and
 
 *566
 
 inherent "right to know”, affords all citizens the means to obtain information concerning the day-to-day functioning of State and local government thus providing the electorate with sufficient information to "make intelligent, informed choices with respect to both the direction and scope of governmental activities” and with an effective tool for exposing waste, negligence and abuse on the part of government officers
 
 (Matter of Fink v Lefkowitz,
 
 47 NY2d 567, 571 [citing Public Officers Law § 84]).
 

 To implement this purpose, FOIL provides that all records of a public agency are presumptively open to public inspection and copying unless otherwise specifically exempted
 
 (see,
 
 Public Officers Law § 87 [2];
 
 Matter of Farbman & Sons v New York City Health & Hosps. Corp.,
 
 62 NY2d 75, 79-80,
 
 supra).
 
 This presumption specifically extends to intraagency and inter-agency materials, such as the report sought in this proceeding, comprised of "statistical or factual tabulations or data”
 
 (see,
 
 Public Officers Law § 87 [2] [g] [i]). Exemptions are to be narrowly construed to provide maximum access, and the agency seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access
 
 (see, Matter of Farbman & Sons v New York City Health & Hosps. Corp.,
 
 62 NY2d 75, 80,
 
 supra; Matter of Fink v Lefkowitz,
 
 47 NY2d 567, 571,
 
 supra).
 

 *
 

 Moreover, because FOIL has made full disclosure by
 
 *567
 
 public agencies a public right, the status or need of the person seeking access is generally of no consequence in construing FOIL and its exemptions. Finally, we note that, while an agency is permitted to restrict access to those records falling within the statutory exemptions, the language of the exemption provision contains permissive rather than mandatory language, and it is within the agency’s discretion to disclose such records, with or without identifying details, if it so chooses
 
 (see, Matter of Short v Board of Managers,
 
 57 NY2d 399, 404;
 
 Matter of John P. v Whalen,
 
 54 NY2d 89, 94).
 

 Intervenor relies on two FOIL exemptions to resist disclosure of his "Lost Time Report” for February 1983. First, he argues that the document is a personnel record within the meaning of Civil Rights Law § 50-a and, as such, is exempt from disclosure under Public Officers Law § 87 (2) (a). Second, he contends that release of the document is barred because it would constitute an unwarranted invasion of personal privacy under Public Officers Law § 87 (2) (b).
 

 FOIL provides that an agency may deny access to records, or portions of records, that "are specifically exempted from disclosure by state or federal statute” (Public Officers Law § 87 [2] [a]). Intervenor urges that the "Lost Time Report” is a personnel record specifically exempted by Civil Rights Law § 50-a. That statute provides, in pertinent part, that: "All personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency * * * shall be considered confidential and not subject to inspection or review without the express written consent of such police officer except as may be mandated by lawful court order.” Intervenor contends that even though no litigation involving him is pending this statute provides a blanket exemption foreclosing disclosure without his consent of any police personnel records used to evaluate his performance. Although we have never held that a State statute must expressly state it is intended to establish a FOIL exemption, we have required a showing of clear legislative intent to establish and preserve that confidentiality which one resisting a FOIL disclosure claims as protection
 
 (see, Matter of Farbman & Sons v New York City Health & Hosps. Corp.,
 
 62 NY2d 75, 81,
 
 supra; Matter of John P. v Whalen,
 
 54 NY2d 89, 96-97,
 
 supra).
 
 The legislative history does not indicate that the Civil Rights Law provision was enacted with the intention claimed by intervenor.
 

 
 *568
 
 Prior to the enactment of section 50-a, the confidentiality of police records was governed by common-law rules governing privileged "official information” which permitted public officials to withhold official records or communications under some circumstances
 
 (see generally, Cirale v 80 Pine St. Corp.,
 
 35 NY2d 113, 117-119;
 
 People v Keating,
 
 286 App Div 150, 153 [Breitel, J.]). The privilege was said to be highly qualified, however, and the court could compel disclosure where it was necessary to avoid false testimony or to secure useful testimony
 
 (see, People v Keating,
 
 286 App Div 150, 153,
 
 supra
 
 [citing 8 Wigmore, Evidence, at 756 [3d ed]). The enactment of the broad disclosure provisions of CPLR article 31 permitted parties to obtain evidence "material and necessary” to pending actions or proceedings and, as litigation involving municipalities and police officers multiplied, these provisions were used increasingly to obtain police records to attack police officers’ credibility in pending litigation or for harassment purposes. Section 50-a was enacted to control that practice
 
 (see,
 
 Memorandum of Senator Padavan and Assemblyman De Salvio, and Memorandum of Division of Criminal Justice Services, Governor’s Bill Jacket, L 1976, ch 413;
 
 see also,
 
 Assembly Debates, June 1, 1976, at 7335-7343; Opn of Committee on Public Access to Records [FOIL-AO-904], Sept. 6, 1978). We recognized that underlying purpose in
 
 Carpenter v City of Plattsburgh,
 
 when we affirmed an Appellate Division determination that section 50-a "was designed to limit access to said personnel records by criminal defense counsel, who used the contents of the records, including unsubstantiated and irrelevant complaints against officers, to embarrass officers during cross-examination”
 
 (Carpenter v City of Plattsburgh,
 
 105 AD2d 295, 298 [Main, J.],
 
 affd for reasons stated below
 
 66 NY2d 791).
 

 The intent behind the legislation was reaffirmed in 1981 when the section was amended to extend its protections to local corrections officers (L 1981, ch 778). The amendment was sponsored by Senator Marino, who had also been active in formulating the FOIL
 
 (see generally,
 
 Marino, New York Freedom of Information Law, 43 Fordham L Rev 83). His memorandum sponsoring the amendment to section 50-a stated that statutory protection should be expanded because: "The increasing number of legal actions brought by inmates and ex-inmates of correctional facilities has been accompanied by an increase in the number of requests from counsel representing them for unlimited access to personnel records of corrections officers. Corrections Officers are concerned that such unre
 
 *569
 
 stricted examinations of their personnel records increases their vulnerability to harassment or reprisals. To help alleviate this concern and to promote better relations between corrections officers and their governmental employers, this legislation imposes reasonable limitations on access to personnel records in the custody of a sheriffs office or county department of corrections.” (1981 NY Legis Ann, at 419.)
 

 Given this history, the Appellate Division correctly determined that the legislative intent underlying the enactment of Civil Rights Law § 50-a was narrowly specific, "to prevent time-consuming and perhaps vexatious investigation into irrelevant collateral matters in the context of a civil or criminal action”
 
 (Matter of Capital Newspapers v Burns,
 
 109 AD2d 92, 96). In view of FOIL’S presumption of access, our practice of construing FOIL exemptions narrowly, and this legislative history, section 50-a should not be construed to exempt intervenor’s "Lost Time Report” from disclosure by the police department in a nonlitigation context under Public Officers Law § 87 (2) (a).
 

 Intervenor contends that
 
 Matter of Gannett Co. v James
 
 (86 AD2d 744,
 
 lv denied
 
 56 NY2d 502) holds otherwise. Indeed, in that case the Appellate Division did construe Civil Rights Law § 50-a as granting a blanket exemption from FOIL disclosure to police personnel records sought by a nonlitigating newspaper. The result reached by the court was clearly correct, however, for each of the requests purportedly exempted from disclosure by section 50-a in that case were also exempt under other FOIL provisions, namely Public Officers Law § 87 (2) (e), (g); § 89 (3)
 
 (see, id.,
 
 pp 745-746). Thus, to the extent that the court held that section 50-a created a blanket exemption insulating police records from FOIL disclosure, its holding was unnecessary because statutory exemptions contained in other sections, which are generally available to public officials, adequately provided protection for the police in that case and should provide similar protection against future unwarranted requests. Insofar as the court in
 
 Gannett
 
 relied on a blanket exemption in section 50-a, it erred.
 

 Intervenor Tuffey also claims that release of the "Lost Time Report” would constitute an unwarranted invasion of personal privacy and, hence, the document is exempt from FOIL disclosure under Public Officers Law § 87 (2) (b). He relies on two clauses of section 89 (2) (b), which set out the characteristics of an unwarranted invasion of personal privacy. They provide that
 

 
 *570
 
 "(b) An unwarranted invasion of personal privacy includes, but shall not be limited to:
 

 "i. disclosure of employment, medical or credit histories or personal references of applicants for employment
 

 * * *
 

 "iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it; or”.
 

 As with all FOIL exemptions, intervenor has the burden of proving he is entitled to the exemption. He has not met that burden. Clause (i) of section 89 (2) (b) is inapplicable to the disputed record because it is neither an employment history (although it records facts concerning employment) nor a medical history, and it does not come within any of the other listed categories. Nor has intervenor satisfied his burden of proving exemption under clause (iv) because his assertion that he will suffer "economic or personal hardship” if the "Lost Time Report” is released to the newspaper is conclusory and not supported by any facts
 
 (see, Matter of Gannett Co. v County of Monroe,
 
 59 AD2d 309, 312,
 
 affd on opn below
 
 45 NY2d 954).
 

 In sum, Officer Tuffey has failed to demonstrate that the material requested by investigative reporter Cipriano comes squarely within a FOIL exemption such that the police department would be justified in barring access to the information by the public or the press.
 

 Accordingly, the order of the Appellate Division granting release of the redacted "Lost Time Report” should be affirmed.
 

 Chief Judge Wachtler and Judges Meyer, Kaye, Alexander, Titone and Hancock, Jr., concur.
 

 Order affirmed, with costs.
 

 *
 

 Both the statute itself, and our case law interpreting it, speak only of the agency’s burden of proof when its denial of disclosure to a FOIL applicant is challenged in an article 78 proceeding
 
 (see, e.g.,
 
 Public Officers Law § 89 [4] [b];
 
 Matter of Farbman & Sons v New York City Health & Hosps. Corp.,
 
 62 NY2d 75, 80;
 
 Matter of Fink v Lefkowitz,
 
 47 NY2d 567, 571). Here, neither the police department nor the City Hall Records Access Officer appealed the decision of Special Term to release the redacted "Lost Time Record”. The appeal is prosecuted solely by intervenor Tuffey, and it is he who seeks to have this court apply a FOIL exemption to bar access to his records. We note that FOIL does not specifically grant a public employee the right to resist disclosure of agency records. The issue of intervenor’s standing to prosecute this appeal is not before us, however, and the parties below consented to Tuffey’s intervention to protect his interests in nondisclosure. Thus, on the record before us we do not reach the issue whether a public employee has a cause of action under FOIL to prevent disclosure
 
 (compare, Carpenter v City of Plattsburgh,
 
 105 AD2d 295 [Main, J.],
 
 affd for reasons stated below
 
 66 NY2d 791). Nor do we reach the issue of whether an agency’s failure to appeal from court-ordered release of agency records is tantamount to a nonreviewable discretionary decision on the part of the agency to release records it might have exempted from disclosure under Public Officers Law § 87 (2)’s permissive exemption provision.