Titone, J.
(dissenting):
I am very troubled by the majority’s expansive reading of the term "personnel records” as that term is used in Civil Rights Law § 50-a (1). I am even more troubled by the majority’s conclusion that this statutory exception to the general rule of disclosure is operative even where there is no pending litigation. The combination of the majority’s holdings on these two points will lead to a broad and amorphous exemption from disclosure well beyond what the Legislature apparently intended. For that reason, I dissent.
It is by now familiar that our State has made a strong commitment to open government and public accountability, a commitment that has been expressed through the various provisions of the Freedom of Information Law (see, Matter of Capital Newspapers v Whalen, 69 NY2d 246, 252; Matter of Capital Newspapers v Burns, 67 NY2d 562, 565; Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 79). Consistent with this commitment and our belief that a democratic system of government functions most effectively when its citizens are well informed, our court has repeatedly stressed that under FOIL all records of public agencies are presumptively open to public inspection unless specifically exempted and that exemptions should be narrowly construed to provide maximum public access (Matter of Capital Newspapers v Burns, supra, at 566; Matter of Farbman & Sons v New York City Health & Hosps. Corp., supra, at 79-80; Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557; Matter of Fink v Lefkowitz, 47 NY2d 567, 571; see, Public Officers Law § 87 [2]; but cf., Matter of Newsday Inc. v Sise, 71 NY2d 146). Viewed against that backdrop, the majority’s conclusion that the inmate grievance documents sought here are "personnel records” within the "narrowly specific” exemption created by Civil Rights Law § 50-a (1) can only be regarded as a major retreat from these principles.
The administrative procedure that generates these grievance documents is mandated by Correction Law § 139, which was adopted after the tragic uprising at Attica prison (see, Matter of Johnson v Ward, 64 AD2d 186). Its purpose is to provide a nonviolent, nonadversarial method of resolving in *35 ternal problems within the prisons (Matter of Patterson v Smith, 53 NY2d 98, 101; see, 7 NYCRR 701.1). As one of the attorneys representing respondent in this proceeding noted, "the grievance system was instituted * * * as a formal mechanism to air grievances and as a safety valve to allow an inmate to vent his feelings and frustrations in writing”.
As is evident from this brief summary of the purposes underlying the grievance procedure, the documents that petitioner seeks, inmate grievances filed in connection with a particular correction officer, were not generated pursuant to any personnel policy or procedure of the Department. Indeed, the conclusion that the grievance system is entirely separate from the Department’s system of personnel evaluation is underscored by the regulation requiring an employee’s written consent before a grievance document may be made part of his or her personnel file (7 NYCRR 701.14 [b]).
Nonetheless, the majority concludes that these grievance documents are "personnel records” within the meaning of Civil Rights Law § 50-a (1). The majority begins with the premise that the term "personnel records,” which is otherwise undefined, is synonymous with the specific criteria listed immediately after the term is used in the statute. Thus, in the majority’s view, "personnel records” are, quite simply, those documents that are "used to evaluate performance toward continued employment or promotion, [and are] under the control of any [of the listed agencies]” (see, Civil Rights Law § 50-a [1]). The grievance records sought here are then deemed exempt under that definition because they are "received, processed and maintained as part of a correctional facility’s operations” and " 'are clearly relied upon in evaluating the employee’s performance’ ” (majority opn, at 31). I would dispute this conclusion both as a matter of simple statutory construction and as a matter of sound public policy.
With respect to the question of statutory construction, it seems clear that the criteria on which the majority relies were intended to create an additional limitation upon, rather than a complementary definition of, the term "personnel records.” As is apparent from the wording of the statute, the Civil Rights Law § 50-a (l)’s exemption from disclosure was intended to apply only when the documents in question both qualify as "personnel records” and are (1) used to evaluate performance and (2) under the agency’s control. Indeed, if, as the majority holds, the Legislature intended the latter two *36 elements to be the only criteria for triggering the statutory exemption, it would have omitted the term "personnel records” entirely and simply stated that "all records used to evaluate performance * * *, under the [law enforcement agency’s] control” are exempt from disclosure. Given the statute’s language, the Legislature must have intended for the courts to give independent effect to the term "personnel records.”
With regard to the policy considerations, I note that the majority’s decision to equate "personnel records” with documents used to evaluate employees’ performance opens the Civil Rights Law § 50-a (1) exemption to almost unlimited use. As anyone with administrative or supervisory experience can attest, virtually any document created by or about an employee may be used as a basis for performance evaluation. Thus, under the majority’s construction, Civil Rights Law § 50-a (1) creates a broad shield that will insulate a wide range of documents maintained by the listed law enforcement agencies from public view. I cannot agree that such a result is consistent either with the Legislature’s intentions or with the sound public policies that underlie FOIL.
Having concluded that the term "personnel records” cannot and should not be read expansively to include all agency documents that could conceivably be used to evaluate employee performance, I would hold that the exemption prescribed in Civil Rights Law § 50-a (1) is limited to documents that are used for evaluation, are within the agency’s control and are created in connection with the delineated agencies’ personnel procedures and policies. Under that view, the grievance documents petitioner seeks would not be exempt, since they were generated in connection with the statutorily mandated inmate grievance procedure, an administrative mechanism that exists for the benefit of prisoners and is completely unrelated to the Department of Correctional Services’ personnel practices (cf., Matter of Capital Newspapers v Burns, supra [concerning disclosure of employee "Lost Time Reports”]).
Moreover, even if I were to agree that these grievance documents are "personnel records” within the meaning of Civil Rights Law § 50-a (1), I could not cast my vote for an affirmance because, in my view, another critical component of the right to an exemption is missing here. In Matter of Capital Newspapers v Burns (supra, at 568-569), we held that the statute could not be invoked as a bar to disclosure of certain personnel records because the request for disclosure had *37 been made in a "nonlitigation context.” We based this holding on the legislative history of the statute and on the observation that "the legislative intent underlying the enactment of Civil Rights Law § 50-a was narrowly specific, 'to prevent time-consuming and perhaps vexatious investigation into irrelevant collateral matters in the context of a civil or criminal action ’ ” (67 NY2d, at 569, supra). In other words, the statute was designed to prevent the use of discovery tools to conduct aimless fishing expeditions in litigated matters when the only result would be unnecessary harassment or embarrassment.
In order to reach its conclusion that Civil Rights Law § 50-a (1) may be invoked here, the majority has had to reinterpret and give a narrower cast to the court’s holding in Capital Newspapers. Thus, while the Capital Newspapers court concluded, without qualifications, that the statute was intended to operate only " 'in the context of a civil or criminal action’ ” (67 NY2d, at 569, supra), the majority in this case states that requested personnel records need not be "related to pending litigation before receiving the statute’s protection”, suggesting that the statute governs even when the request merely "could have [a] relation to potential litigation” (majority opn, at 33). Once again, the majority has strained to reach a result that renders the Civil Rights Law § 50-a (1) exemption far broader than its drafters intended. In the process, it has created an anomalous and unworkable rule.
First, the majority has provided no guidance as to how the lower courts may distinguish between disclosure requests with no relation to litigation of any kind and those which are potentially related to some future, yet-to-be identified litigation. Apart from sheer speculation and assumptions based upon the applicant’s identity, no solution to this problem is readily apparent. Indeed, the majority in this case has not explained its basis for distinguishing between the information request in this case and that made in Capital Newspapers, and the only distinction that suggests itself is that urged by respondents: i.e., that the request in Capital Newspapers was made by a news media applicant, while the request in this case was made by a legal advocacy organization specializing in prisoners’ rights.
The second problem with the majority’s analysis is that it transforms the qualified exemption created by the statute into a mixed exemption, with some records receiving absolute protection while others are subject to court-ordered disclosure. *38 However, Civil Rights Law § 50-a (1) makes all law enforcement personnel records presumptively exempt from disclosure and permits disclosure of any such record if release is "mandated by lawful court order” (Civil Rights Law § 50-a [1]). The reference to court-ordered disclosure in subdivision (1) is unqualified and clearly was intended to apply to all requests for information covered by that subdivision. Thus, there is simply no basis in the statutory language or design for the distinction the majority now draws between records sought in the context of pending litigation, which are subject to court-ordered disclosure, and records sought for other purposes, which are not even eligible for judicial consideration.
Since the provision for court-ordered disclosure is unqualified and the determination as to whether disclosure should be ordered under the statute depends upon whether the records are "relevant and material in the action before [the court]” (Civil Rights Law § 50-a [3] [emphasis supplied]), it seems clear beyond doubt that the statute was intended to apply, as we held in Capital Newspapers (supra), only when a request for disclosure is made in the context of pending litigation. Indeed, the existence of pending litigation is essential to the operation of the statute, since without it there is no basis for the court to apply the statutory criteria of relevance and materiality or to determine whether documents presumptively exempt under the statute should be released.
In the final analysis, the conclusion that court-ordered disclosure is available only in the context of ongoing litigation cannot be reconciled either with the statutory language or with our recent holding in Capital Newspapers (supra), in which disclosure was ordered precisely because there was no pending litigation. I can perceive only two ways in which the holdings in Capital Newspapers and this case can be reconciled. Either Capital Newspapers has been overruled sub silentio or a new, tripartite disclosure system for law enforcement personnel records has been created. If, in fact, Capital Newspapers is still the law, then requests for information having remote or no potential use in litigation are still subject to disclosure without qualification. In contrast, records that are sought within the context of pending litigation are subject to the Civil Rights Law § 50-a privilege, but may be released upon a judicial finding that they are relevant and material in the litigation. Finally, under the majority’s new and broadened view of Civil Rights Law § 50-a’s coverage, records which a court somehow discerns may be useful in potential, yet-to-be *39 determined litigation are absolutely privileged, since they fall within the statute’s provision for exemption from disclosure but are not within the statutory provisions for relief through judicial intervention (see, Civil Rights Law § 50-a [2]-[3]). I can see no rational relationship between these distinctions and the purposes underlying the statute. Accordingly, I cannot accept that this anomalous result is what the Legislature had in mind.
In closing, I would stress that while I am sensitive to the potential discomfort and legitimate concern that many law enforcement officers have in relation to this type of disclosure, such considerations do not alone furnish a sound basis for shielding all records relating to their official conduct from public view. The Legislature struck an appropriate balance between these concerns and the competing concern of promoting accountability of public servants by creating a "narrowly specific” exemption from disclosure for certain records, subject to judicial oversight (see, Matter of Capital Newspapers v Burns, supra, at 569). By construing this exemption broadly and holding that it is applicable in a wide variety of situations involving "potential litigation,” the majority has tipped the balance in favor of the law enforcement officers’ desire for privacy and, in the process, has impaired the legislative values of openness and accountability that are implicit in the statutory scheme. Because that result is inconsistent with both our prior decisions and the clearly declared legislative intent, I cannot join my colleagues’ decision to affirm the Appellate Division’s decision in this case.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Bellacosa concur with Judge Hancock, Jr.; Judge Titone dissents and votes to reverse in a separate opinion.
Order affirmed, with costs.