OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioners have commenced the above-captioned CPLR article 78 proceeding to review determinations made with respect to Freedom of Information Law[1] (FOIL) requests made by petitioners. The determinations, dated respectively April 12, 1995 as to petitioner New York Times Company (New York Times) and December 4, 1995 as to petitioner Newsday, Inc. (Newsday), denied petitioners’ separate requests for all data in *312 the Statewide Planning and Research Cooperative System (SPARCS).[2]
The determinations which denied the FOIL requests cite Department of Health (DOH) regulations which prohibit disclosure, specifically 10 NYCRR 400.18. A central issue in the instant proceeding is whether 10 NYCRR 400.18 conflicts with the provisions of Public Officers Law article 6.
SPARCS is a State-wide centralized health care system which receives data submitted to the DOH from hospitals, residential health care facilities and hospital-based freestanding centers (see, 10 NYCRR 400.18 [a] [1]). Requests for data are reviewed by what is known as the data protection review board (10 NYCRR 400.18). Data pertaining to a particular person’s facility stay is deemed "deniable” (that is, not subject to disclosure) where it contains certain elements which, if disclosed, would constitute an unwarranted invasion of personal privacy (10 NYCRR 400.18 [a] [2]). These elements include: medical record number, admit number, admit date, discharge date, date(s) of surgery, third-party payor identification numbers, address, birth date, physician identification, accident date, facility identification and other identifying data (10 NYCRR 400.18 [a] [2]).
Petitioners object to the use of the DOH regulations in reviewing FOIL requests, arguing that the regulations, in places, purport to override Public Officers Law article 6. Additionally, according to petitioners, the SPARCS data protection review board makes its determinations, in part, on the basis of the identity of the requesting party and/or the purpose for which the information is requested, a principle in conflict with the spirit and intent of FOIL.
Respondent maintains that DOH regulations are essential to protect the personal privacy of medical patients. According to respondent, the regulations identify the information which would constitute an unwarranted invasion of personal privacy if it were permitted to be released. The data protection review board, respondent indicates, reviews data requests to determine if the release of data can be conditioned in such a manner so that it will not be classified as an unwarranted invasion of privacy.
Each party appears to have some recognition of the merits of the position of its opponent. Petitioners acknowledge that data *313 which directly identifies a patient, a patient’s name, Social Security number and the like, are protected from disclosure by the personal privacy exemption under FOIL. In a similar fashion, respondent has indicated that it has no objection to furnishing information concerning the identity of facilities and insurers.
Respondent, nevertheless, strenuously objects to disclosure of data which would result in identification of physicians. As a part of its argument, respondent maintains that physicians possess their own privacy interest which must also be protected. According to respondent, this privacy interest has been recognized through the adoption of the Health Care Reform Act of 1996 (L 1996, ch 639, § 60-a, codified in Public Health Law § 2804-b). Under Public Health Law § 2804-b a State task force on health care quality improvement and information systems was created. One of the committees comprising the task force is the Committee on Health Information and Quality Improvement, which has among its duties: "to improve the accessibility and appropriate use of health care information collected by the health department and other available data while maintaining confidentiality and providing other important safeguards to protect the privacy of individual patients and physicians” (Public Health Law § 2804-b [2] [c] [i] [emphasis supplied]).
Apart from the foregoing, respondent, in further support of its position, cites the Personal Privacy Protection Law (Public Officers Law § 96 [1] [c]) which prohibits the release of data contained in the government’s electronic data system if the release would result in the unwarranted invasion of personal privacy. Respondent contends that this provision applies equally to SPARCS data as it relates to both patients and their physicians.
A review of the pertinent provisions of the Public Officers Law is necessary.
Public Officers Law § 84, entitled "Legislative declaration”, recites:
"The legislature hereby finds that a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government.
"As state and local government services increase and public problems become more sophisticated and complex and therefore *314 harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible.
"The people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.
"The legislature therefore declares that government is the public’s business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article” (emphasis supplied).
Public Officers Law § 87 (2) (b) recites as follows:
"2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that * * *
"(b) if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article”.
Public Officers Law § 89 (2) recites in part:
"(a) The committee on public access to records may promulgate guidelines regarding deletion of identifying details or withholding of records otherwise available under this article to prevent unwarranted invasions of personal privacy. In the absence of such guidelines, an agency may delete identifying details when it makes records available.
"(b) An unwarranted invasion of personal privacy includes, but shall not be limited to:
"i. disclosure of * * * medical * * * histories * * *
"ii. disclosure of items involving the medical or personal records of a client or patient in a medical facility * * *
"(c) Unless otherwise provided by this article, disclosure shall not be construed to constitute an unwarranted invasion of personal privacy pursuant to paragraphs (a) and (b) of this subdivision:
"i. when identifying details are deleted;
"ii. when the person to whom a record pertains consents in writing to disclosure;
"iii. when upon presenting reasonable proof of identity, a person seeks access to records pertaining to him.”
*315 Public Officers Law § 96 (1) (c) recites:
"(1) No agency may disclose any record or personal information unless such disclosure is * * *
"(c) subject to disclosure under article six of this chapter, unless disclosure of such information would constitute an unwarranted invasion of personal privacy as defined in paragraph (a) of subdivision two of section eighty-nine of this chapter”.
It is settled law that FOIL is based on the overriding policy consideration that "the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government” (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). The Court of Appeals has repeatedly held that FOIL is to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government (see, Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246, 252; Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 564; Matter of Fink v Lefkowitz, supra, at 571).
All agency records are presumptively available for public inspection and copying, unless the documents in question fall within one of the enumerated exemptions set forth in Public Officers Law § 87 (2) (see, Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp., 87 NY2d 410, 417; Matter of Hanig v State of N. Y. Dept. of Motor Vehicles, 79 NY2d 106, 109; Matter of Legal Aid Socy. v New York State Dept. of Social Servs., 195 AD2d 150, 152). The exemptions available are to be narrowly construed, and "the agency seeking to prevent disclosure bears the burden of demonstrating the applicability of the particular exemption claimed” (Matter of Legal Aid Socy. v New York State Dept. of Social Servs., supra, at 153; see, Public Officers Law § 89 [4] [b]; see, Matter of Hanig v State of N. Y. Dept. of Motor Vehicles, supra, at 109). The agency at issue must "articulat[e] a particularized and specific justification for denying access” to the requested documents (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566).
Under Public Officers Law § 89 (2) the committee on public access to records may promulgate guidelines regarding deletion of identifying details or withholding of records otherwise available to prevent unwarranted invasions of personal privacy. In the absence of such guidelines an agency may delete identifying details when it makes records available (see, Public Officers Law § 89 [2] [a]). The mechanism by which an agency fulfills its obligations under FOIL is left to the agency to devise. The fact that respondent in this instance has created a "data *316 protection review board” to carry out this function and that respondent has developed its own regulation (10 NYCRR 400.18) is of no particular moment so long as the disclosure provisions of the Public Officers Law are carried out.
Petitioners acknowledge that respondent may properly withhold patients’ names, Social Security numbers and similar data, information which, in their view, "directly” identifies the individual. The court notes, however, that Public Officers Law § 89 (2) (c) (i) makes no differentiation between direct or indirect identifiers. Said section merely recites that "[u]nless otherwise provided by this article, disclosure shall not be construed to constitute an unwarranted invasion of personal privacy pursuant to paragraphs (a) and (b) of this subdivision * * * when identifying details are deleted” (Public Officers Law § 89 [2] [c] [i] [emphasis supplied]). In many respects, it could be argued (if one were to adopt the suggested "direct”"indirect” dichotomy) that the only purely "direct” identifier is the individual’s name. It is nonetheless clear that the statute contemplates much more than this when it refers to "identifying details”.
For example, in the court’s opinion, information.such as the patient’s name, address, Social Security number, Medicaid number, Medicare number, medical record number, admit number, patient identification number utilized by third-party payor(s) and room number are clearly the "identifying details” referred to in Public Officers Law § 89 (2) (c) (i), inasmuch as such information is traceable to and/or closely connected with the particular individual. As to this kind of information the agency has the discretion and, more importantly, the obligation to delete same from a response to a FOIL request.
The argument advanced by respondent is that there are other items of data which are also exempt from disclosure. These items include that information (the names of physicians, for example) which, if taken individually, would not lead to identification of a patient, but if combined with other information and subjected to careful scrutiny, would provide enough clues to collectively reveal the patient’s identity.
The Third Department, Appellate Division, rejected a similar argument in Matter of Legal Aid Socy. v New York State Dept. of Social Servs. (195 AD2d 150, 152-153 [3d Dept 1993], supra). In Matter of Legal Aid Socy. (supra) the New York State Department of Social Services denied petitioner’s FOIL request to provide data related to fair hearings conducted in Schenectady County. Although the Department of Social Ser *317 vices was willing to disclose all information regarding fair hearings State-wide, it took the position that it could not disclose such information by county and that the name of the county would have to be redacted from State-wide data. The rationale for denial of the application was that redaction of the county identifier was necessary to maintain the confidentiality of public assistance applicants or recipients. It was claimed that because fewer than 10 fair hearing determinations took place on average in a given month, an individual intent on discovering the particulars of a particular case would only have to review 20 to 30 decisions to locate the case sought. The Appellate Division stated: "In our view, such speculation does not rise to the level of 'a particularized and specific justification for denying access’ to the records requested” (Matter of Legal Aid Socy. v New York State Dept. of Social Servs., supra, at 153, quoting Matter of Capital Newspapers Div. of Hearst Corp. v Burns, supra, at 566).
In the court’s view, it has not been demonstrated by respondent that disclosure of physician identifiers will lead to the identification of patients, even where this information is used in combination with other information properly disclosable under FOIL. In fact, there has been a complete absence of proof in support of respondent’s argument. The court concludes that respondent has failed in its burden to furnish "particularized and specific justification” for denying access to physician identifier information requested (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, supra, at 566).
With respect to issues raised in connection with the privacy interests of physicians, the court first notes that neither the April 12, 1995 determination nor the December 4, 1995 determination made mention of such matters. A reading of these decisions will reveal that they were confined in their reasoning to issues related to privacy interests of the patient. Even the appeals decisions neglected to comment upon the need to protect the privacy of the physician.[3]
It is well settled that judicial review of an administrative determination is limited to the grounds invoked by the administrative agency (see, Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758-759). If those *318 grounds are insufficient or improper, the court is powerless to sanction the determination by substituting what it deems to be a more appropriate or proper basis (Matter of Consolidated Edison Co. v Public Serv. Commn., 63 NY2d 424, 441, appeal dismissed 470 US 1075). It would therefore appear that issues related to the privacy interests of physicians may not now be used to justify the agency’s determination. The court so finds.
In addition, it is the court’s view that respondent’s reliance upon Public Health Law § 2804-b is misplaced. Public Health Law § 2804-b, enacted on September 12,1996, could not operate as retroactive justification for the belated attempt to raise an issue related to physicians’ privacy, not mentioned in the original determinations. Public Health Law § 2804-b (2) (c) (i) establishes the general responsibilities of the Committee on Health Information and Quality Improvement: "[to] work in collaboration with the health department to improve the accessibility and appropriate use of health care information collected by the health department * * * while maintaining confidentiality and providing other important safeguards to protect the privacy of individual patients and physicians”.[4] Apart from the general pronouncement of broad statement of policy, it is evident that a privacy exemption for the protection of physicians with respect to specific information or documents has not been explicitly created.
The court concludes that there is no statutory authority, applicable in the instant proceeding, which would prevent disclosure of physician identifiers. Moreover, were the court to reach the issue, it would adopt and expand, as to the professional services of all physicians, the finding of Supreme Court Justice Harold J. Hughes in Matter of Newsday v New York State Dept. of Health (Sup Ct, Albany County, Aug. 9, 1991, Hughes, J., index No. 3406-91) that as to their professional services, cardiac surgeons do not possess a personal privacy interest in information collected and maintained by the Department of Health.
The court now turns to the conditions which respondent has attempted to impose upon FOIL applicants based upon the identity of the applicant and the intended use of the information sought. Respondent, as indicated, justifies such actions on grounds that appropriate limiting conditions may transform an unwarranted invasion of privacy to one that is permissible and warranted.
*319 A review of Public Officers Law § 89 (2) (b) and (c) and § 96 provides no support for adoption of such a policy.
It is well settled that "the status or need of the person seeking access is generally of no consequence in construing FOIL and its exemptions” (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d, supra, at 567). This principle, when coupled with the legislative declaration of Public Officers Law § 84 ("the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article”) leads the court to conclude that conditions and/or limitations on disclosure, other than the deletion of identifying details, may not be countenanced.
It has been held that exemptions from FOIL may only be created by State or Federal statute, not by administrative regulation (see, Matter of Zuckerman v New York State Bd. of Parole, 53 AD2d 405 [3d Dept 1976]; Matter of Brownstone Publs. v New York City Dept. of Fin., 150 AD2d 185 [1st Dept 1989], citing Matter of Morris v Martin, 55 NY2d 1026, revg 82 AD2d 965). To the extent that SPARCS regulations (10 NYCRR 400.18) purport to create a personal privacy exemption which does not exist under the Public Officers Law, the court concludes they are not enforceable.
In view of all the foregoing, the court concludes that respondent’s determination was made in violation of the Public Officers Law. The petition should be granted to the extent that SPARCS data is released pursuant to petitioners’ respective FOIL requests, subject to redaction of all identifying details in keeping with this decision. Respondent in complying with a FOIL request should clearly indicate what categories of information, if any, it is withholding from disclosure, citing the appropriate provision(s) of the Public Officers Law.
With respect to the application for attorney’s fees, it is well settled that "[a] party may receive counsel fees in a FOIL proceeding when it is established that (1) the petitioner substantially prevailed, (2) the record requested was of 'clearly significant interest to the general public’, and (3) 'the agency lacked a reasonable basis in law for withholding the record’ ” (Matter of Powhida v City of Albany, 147 AD2d 236, 238, quoting Public Officers Law § 89 [4] [c] [i], [ii]; see, Matter of Legal Aid Socy. v New York State Dept. of Social Servs., 195 AD2d 150, 153-154, supra). "[E]ven if all these requirements are met, an award of counsel fees is still discretionary (see, Public Officers Law § 89 [4] [c])” (Matter of Powhida v City of Albany, *320 supra, at 238-239; see, Matter of Cross-Sound Ferry Servs. v Department of Transp., 219 AD2d 346, 350 [3d Dept 1995]).
The court finds that petitioner has substantially prevailed. In addition, it appears that the SPARCS records are matters of significant interest to the general public. While in the court’s mind the respondent lacked a reasonable basis for withholding information with respect to physician identifiers, the court cannot conclude that respondent’s broader argument, related to what information would fall within the definition of the term "identifying details”, is wholly lacking in merit. This factor, combined with what the court perceives to be an unduly narrow interpretation of the same term from petitioners’ standpoint (limited to what petitioners would deem to be "direct” identifiers), leads the court to conclude that an award of attorney’s fees is not warranted.
Accordingly, it is ordered and adjudged that the petition is hereby granted to the extent that the SPARCS data requested by petitioners must be released subject to redaction of all identifying details in keeping with this decision; and it is ordered and adjudged that respondent in complying with petitioners’ FOIL requests must indicate what categories of information, if any, are not being disclosed to petitioners and must further inform the petitioners with regard to the specific grounds for withholding such information under the Public Officers Law; and it is ordered and adjudged that petitioners’ request for counsel fees be and hereby is denied.

. Public Officers Law § 84 et seq.

. Petitioner, New York Times, requested all SPARCS data for the years 1985 to present. Petitioner, Newsday, requested all SPARCS data for the years 1988 to present.

. The appeals decision dated March 28, 1996 addressed to petitioner New York Times indicated that it would not redact physician names. In a letter dated July 18, 1996 the respondent "clarified” its ruling by stating, inter alia, that due to information previously released, it would not reveal the identity of physicians in this instance.

. See, L 1996, ch 639, § 60-a.