Bernardo J. MERCADO, Plaintiff,

v.

DIVISION OF NEW YORK STATE
POLICE, Defendant.

No. 96Civ.0235 (PKL)(SEG).

United States District Court,
S.D. New York.

Jan. 9, 1998.

Bernardo J. Mercado, New Rochelle, NY, pro se.

Elizabeth Ellis, Asst. Atty. Gen., New York State Dept. of Law, New York City, for Defendant.

## MEMORANDUM

GRUBIN, United States Magistrate Judge.

This is a Title VII action in which plaintiff *pro se*, an hispanic former New York State police officer, alleges, *inter alia*, that he and other minority officers were "dealt with more severely in disciplinary matters" than were white officers and that this discriminatory practice resulted in his termination. Complaint ¶ 8 and undesignated exhibit referenced in that paragraph. Plaintiff now moves to compel production of (1) evaluations of all members of his former Troop from 1984 to 1993 and (2) documents relating to disciplinary charges, investigations, proceedings and penalties relating to 10 members of the Troop. Defendant moves to dismiss the complaint pursuant to Fed.R.Civ.P. 37 as sanctions for plaintiff's failure to appear at two depositions.

*Plaintiff's Motion to Compel*

Defendant argues that the documents which plaintiff seeks are privileged against disclosure under New York Civil Rights Law § 50–a. Section 50–a provides that the personnel files of police officers are not to be disclosed except by consent of the individual or pursuant to court order. The function of this statute "is to protect irrelevant materials from disclosure: to prevent fishing expeditions, not to safeguard privacy itself." *King v. Conde*, 121 F.R.D. 180, 192 (S.D.N.Y.1988) (citing *Matter of Capital Newspapers v. Burns*, 67 N.Y.2d 562, 505 N.Y.S.2d 576, 496 N.E.2d 665 (1986)). This New York statute does not govern discovery in federal cases, and there is no analogue in federal law to this provision. *Rodriguez v. Harris*, Nos. 87 Civ. 7368(RO) and 87 Civ. 8900(RO), 1991 WL 107444 (S.D.N.Y. June 13, 1991). However, federal common law provides for some consideration of state law privileges, since a " 'strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policies.' " *Lora v. Board of Education*, 74 F.R.D. 565, 576 (E.D.N.Y.1977) (quoting *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976)). To resolve discovery disputes of this kind, a federal court must balance the plaintiff's interests in disclosure against the state's legitimate concern of protecting the confidentiality of the officers' personnel files from unnecessary intrusions. *Unger v. Cohen*, 125 F.R.D. 67, 69

(S.D.N.Y.1989); *King v. Conde*, 121 F.R.D. at 190–91.

With respect to the evaluations of plaintiff's former colleagues, plaintiff's own papers demonstrate that these documents are irrelevant to establishing plaintiff's claims of discrimination against him. While plaintiff asserts that these evaluations may show "whether white officers received more favorable evaluations than Hispanic or possibly even black officers," he states that he himself received superior performance evaluations. Plaintiff's Memorandum in Support of Request for Document Production, pp. 5–6. Indeed, defendant does not dispute this, arguing instead that plaintiff's termination was due to his misconduct and insubordinate acts, not his "performance evaluations." Affidavit of Richard P. Barrantes, ¶¶ 7, 11. Since the evaluations of these other officers requested by plaintiff would thus not appear relevant or reasonably calculated to lead to the discovery of admissible evidence as to plaintiff's claims, at least at this time, I find no reason to override the state's interests in protecting the confidentiality of these officers' evaluations. Accordingly, plaintiff's motion to compel production of them is denied. If other discovery should reveal possible relevance of these documents, plaintiff may renew his application then for them.

■ With respect to the ten disciplinary records sought, on the other hand, as defendant acknowledges, such records might be relevant to prove that similarly situated white officers were treated differently. Defendant asserts, however, that the information sought by plaintiff does not involve disciplinary instances similar to plaintiff's, although it does not provide any basis for that assertion and, instead, faults plaintiff for failing to suggest any similarity. Defendant simply asserts, conclusorily, that, based upon its own review of the records, the situations were not similar without indicating what these situations were or other factual information. Defendant also, in boilerplate language, sets forth the general policy reasons for not disclosing the documents, including the protection of officers against frivolous or vexatious claims concerning their conduct and the protection of the internal deliberative process of law enforcement agencies.[1]

Plaintiff's interests in obtaining these admittedly relevant documents outweighs the policy interests identified by defendant. Plaintiff does not intend to file any claims against the officers, and evidence concerning the decision-making process resulting in plaintiff's termination is obviously critically relevant here. Moreover, the policy concerns identified by defendant may be adequately protected by a confidentiality agreement and protective order with regard to these documents. *See, e.g., Tolbert v. Atkins*, No. 93 Civ. 2791(RPP), 1995 WL 230408 (S.D.N.Y. April 18, 1995); *Askew v. Rigler*, 130 F.R.D. 26, 27 (S.D.N.Y.1990). Accordingly, if defendant requests, plaintiff shall enter into a confidentiality agreement for the court's signature, at which time defendant shall produce the disciplinary records at issue.

*Defendant's Motion for Sanctions*

■ Defendant moves for sanctions under Fed.R.Civ.P. 37(d)(1) on the ground that plaintiff twice failed to appear at depositions duly noticed by defendant. After plaintiff failed to appear on the first scheduled date, defendant's counsel sent him a letter re-noticing the deposition and advising plaintiff:

> Your continued failure to provide required discovery, may result in defendants seeking sanctions, including dismissal of your case.

Affidavit of Elizabeth G. Ellis ¶ 7. Plaintiff nonetheless failed to appear again. Defendant seeks dismissal under Fed.R.Civ.P. 37(b)(2)(C) or, in the alternative, an award of reasonable expenses, including attorney's fees, caused by the failure and/or an order

---

1. Although defendant uses the term "deliberative process," I do not construe this as suggesting that the deliberative process privilege is implicated herein. That privilege, which protects the executive branch in its formulation of governmental policy by shielding documents reflecting deliberations on "important public policies," is, in any event, inapplicable here because it does not concern personnel decisions by law enforcement agencies. *See Morrissey v. City of New York*, 171 F.R.D. 85, 89 (S.D.N.Y.1997).

directing plaintiff to appear at a deposition on a date certain.

Plaintiff admits that he twice failed to appear for his deposition. He states, however, that he was in "fear of being deposed without an attorney, without those documents which [he] believed were necessary to attend the deposition." He further states that his failure to appear was not the result of any "intentional disregard for [his] obligations," but because he was not "entirely familiar with the consequences of failing to appear for a deposition" and that he has now been advised by attorneys whom he consulted that he must appear. Affidavit of Bernardo J. Mercado dated October 3, 1997, ¶¶ 3–5.

■ Fed.R.Civ.P. 37(d)0006 provides that if a party fails to appear for a properly noticed deposition, the court "on motion may make such orders in regard to the failure as are just," including orders dismissing the action or imposing any of the other sanctions listed in paragraphs (A), (B) and (C) of Fed. R.Civ.P. 37(b)(2)0007. "[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations . . . , and then only when a court finds willfulness, bad faith, or any fault on the part of the prospective deponent." *Valentine v. Museum of Modern Art,* 29 F.3d 47, 49 (2d Cir.1994) (quoting *Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 764 (2d Cir.1990), *cert. denied,* 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991)). Although this sanction may be imposed even on *pro se* litigants, *see id.* at 50, the Second Circuit has cautioned district courts to exercise particular restraint when considering the imposition of sanctions on *pro se* litigants. *Baker v. Ace Advertisers' Svc., Inc.,* 153 F.R.D. 38, 40 (S.D.N.Y.1992). Dismissal is appropriate only if alternative, less drastic sanctions are inappropriate, *see, e.g., John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988); *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930 (2d Cir.1988), and the court has warned the *pro se* litigant that this sanction might result from continued misconduct. *See, e.g., Valentine v. Museum of Modern Art,* 29 F.3d at 49; *Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d at 764.

Plaintiff's justification for his misconduct herein is not particularly credible, given his prosecution of his case to this point, which has shown knowledge of legal procedures, and given defendant's warning to him after his first failure to appear. Even taking plaintiff at his word, it is irrelevant whether he was "extremely familiar" with the *consequences* of failing to appear if he knew he was required to do so. On the other hand, his misconduct was not so extreme as to warrant dismissal, and there are clearly less drastic measures to rectify the situation. Defendant asks that, if this court elects not to dismiss this case, plaintiff should at least be ordered to appear for his deposition on a date certain, and plaintiff has indicated his intention to do so.

■ Defendant also requests that plaintiff be ordered to pay expenses caused by the failure. Fed.R.Civ.P. 37(d) provides that "the court shall require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." However, defendant herein has not met its burden of documenting the sum requested. Defendant has not supplied any time records which are a prerequisite to recovering attorney's fees in this circuit, *see, e.g., New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir.1983), nor any evidence to substantiate its attorney's claim that her time should be charged at $150 per hour. *See Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir.1997) (citing *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989)); *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1160 (2d Cir. 1994) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)); *Envirosource, Inc. v. Horsehead Resource Dev. Co.,* 981 F.Supp. 876, 881 (S.D.N.Y.1998). Defendant does enclose invoices from the court reporter who was paid $65 on each occasion. Affidavit of Elizabeth G. Ellis ¶ 15.

Plaintiff is hereby ORDERED to schedule his deposition with defendant to take place

prior to January 20, 1998. Plaintiff is further ORDERED to pay defendant by January 30, 1998 the $130 in expenses occasioned by his failure to appear at the depositions.

Plaintiff is warned that, if he fails to appear at his deposition on the agreed-upon date, his case will be dismissed and defendant will be awarded the entirety of its expenses incurred.

SO ORDERED.