**Legal Aid Socy. v Records Access Officer**

2025 NY Slip Op 30996(U)

March 26, 2025

Supreme Court, New York County

Docket Number: Index No. 156944/2024

Judge: Arthur F. Engoron

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. ARTHUR F. ENGORON**                    PART                    **37**

*Justice*

------------------------------------------------------------------------X

THE LEGAL AID SOCIETY,

                       Petitioner,

                - v -

RECORDS ACCESS OFFICER, NEW YORK CITY POLICE
DEPARTMENT,

                    Respondents.

------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 156944/2024 |
| MOTION DATE | 08/01/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 4, 5, 6, 8, 9, 11, 24,

were read on this motion for                  CPLR ARTICLE 78 RELIEF       .

Upon the foregoing documents, after oral argument on March 14, 2025, and for the reasons stated hereinbelow, the petition is denied.

Background

In this CPLR Article 78 Special Proceeding, petitioner, The Legal Aid Society, seeks to compel respondent, the Records Access Officer of the New York City Police Department, to turn over, pursuant to the Freedom of Information Law ("FOIL"), Public Officers Law § 84 *et seq.,* "identification photographs [of] all active members of service[,] including police officers, lieutenants, captains, etc., each accompanied by the officer's name and tax identification number." NYSCEF Doc. No. 1.

After much unfortunate and inexcusable delay, respondent denied the request on the grounds that the records are exempt from disclosure because (1) "they were compiled for law enforcement purposes and would reveal criminal investigative techniques or procedures that are not routine" under Public Officers Law § 87(2)(e)(iv), (2) "if disclosed, the records could endanger the life or safety of any person" under Public Officers Law § 87(2)(f), and (3) "[d]isclosure of the requested records would require extraordinary efforts not required under FOIL." NYSCEF Doc. No. 16.

Discussion

Courts have interpreted FOIL broadly, in light of its goal of transparency. The government must turn over requested records unless they fall within a specific exemption; the exemptions are to be construed narrowly, and the burden is on the government to demonstrate that an exemption applies. E.g., Newsday v Sise, 71 NY2d 146, 150 (1987) ("The Legislature enacted FOIL to provide the public with a means of access to government records in order to encourage public awareness . . . and to discourage official secrecy.").

Respondent now claims exemptions as follows:

> The records at issue are exempt from disclosure under numerous FOIL provisions, as disclosure would endanger life and safety, under POL § 87(2)(f); interfere with ongoing law enforcement investigations or judicial proceedings, under POL § 87(2)(e)(i); reveal non-routine criminal investigative techniques or procedures, under POL § 87(2)(e)(iv); and would constitute an unwarranted invasion of personal privacy, under POL §§ 87(2)(b) and 89(2)(b).

NYSCEF Doc. No. 12.

This Court rejects respondent's argument that disclosure would "reveal non-routine criminal investigative techniques or procedures," as there is no factual basis for this claim. Respondent has not identified, much less explained, any such "techniques" or "procedures."

The Court also rejects the "personal privacy" claim. Police officers, like other public servants, give up a modicum of "personal privacy" in exchange for the various benefits of the job. Most police officers work out in the open, in uniform, and wear nametags. Members of the public have a right to know with whom they are dealing, and to hold accountable anyone acting improperly.

In addition, the identification photos petitioner seeks were obviously not compiled "for law enforcement purposes." Respondent has not identified, much less explained, any such purpose.

Petitioner points out that, not surprisingly, many complaints of misconduct against New York City Police Department ("NYPD") officers, especially in volatile situations, cannot be processed because the complainants cannot identify the subject police officers. NYSCEF Doc. No. 2, at 5. Petitioner summarizes the "endangerment" exception as follows:

> The endangerment exception under § 87(2)(f) is only justified if the agency meets its burden of showing that disclosure of the requested records presents the possibility of endangering a person's life. Connolly v New York Guard, 175 AD2d 372 (3d Dept 1991). This exemption, too, must be "narrowly construed to provide maximum access," requiring "a particularized and specific justification for denying access." Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 (1986). This justification cannot be "improperly based solely upon speculation." Matter of Mack v Howard, 91 AD3d 1315, 1316 (4th Dept 2012).

NYSCEF Doc. No. 2, at 11.

As noted above, an agency can withhold records even if danger is merely "possible." Bellamy v New York City Police Dept., 87 AD3d 874, 875 (1st Dept 2011); accord, Stronza v Hoke, 148 AD2d 900, 901 (3d Dept 1989).

156944/2024   THE LEGAL AID SOCIETY vs. RECORDS ACCESS OFFICER, NEW YORK CITY POLICE DEPARTMENT
Motion No. 001

Page 2 of 5

[* 2]

2 of 5

Respondent has eloquently, comprehensively, and, most importantly, convincingly described the dangers of police service.[1] NYSCEF Doc. No. 12, ¶ 28. Public dissemination of identification names and identification photos would allow any disgruntled person to obtain, online, the address of any officer against whom the person held a grudge. To a certain extent, this can already be done; but granting the petition would facilitate this scenario. Also, many police officers work in plainclothes or undercover units, to which any uniformed officer could someday be transferred; obviously, their identities must be shielded from public view. NYSCEF Doc. No. 12, ¶¶ 29-34.

Miguel Iglesias, NYPD's Chief of Internal Affairs, claims that uncovering the identity of undercover officers will impede investigations of possible police misconduct or corruption. NYSCEF Doc. No. 18. However, petitioner clarifies in its reply memorandum that it does not seek photos of "active" undercover officers. Respondent counters that any uniformed officer can someday go undercover.

Robert Bava, an NYPD Deputy Inspector and Commanding Officer of the Intelligence & Counterterrorism Bureau's Operations and Analysis Section, argues that granting the petition "would constitute a danger to the life and safety" of police officers, "would interfere [with] or compromise investigations involving undercover officers and/or surveillance operations involving plainclothes officers" and "would prevent the NYPD from placing current officers who are not currently in an undercover assignment in a future undercover assignment." NYSCEF Doc. No. 19.

Officer Bava has also provided a sad and troubling litany of deadly violence against police officers:

> Police Officers Wenjian Liu and Raphael Ramos were assassinated in Brooklyn in December 2014. In 2015, … Police Officer Randolph Holder was shot and killed while pursuing an armed subject. In November 2016, NYPD Sergeant Paul Tuozzolo was shot and killed by an individual who was evading the police. In July 2017, Police Officer Miosotis Familia was killed in the line of duty while in her police vehicle in the Bronx. In February 2019, Detective Brian Simonsen was killed while responding to a 911 call of an armed robbery. In September 2019, Police Officer Brian Mulkeen was shot and killed after he and his partner confronted an individual suspected of being in possession of a firearm. In January 2022, Police Officers Jason Rivera and Wilbert Mora were killed while investigating a domestic dispute. Finally, in March 2024, Police Officer Jonathan Diller was killed while conducting a traffic stop.[2]

---

[1] A 2020 survey ranks being a police officer as the twenty-second most dangerous job in the country, with "logger" claiming the top spot. https://www.ishn.com/articles/112748-top-25-most-dangerous-jobs-in-the-united-states, last accessed Mar. 26, 2025.

[2] Respondent does not claim that any of these killings resulted from online publication of police photographs.

156944/2024   THE LEGAL AID SOCIETY vs. RECORDS ACCESS OFFICER, NEW YORK CITY          Page 3 of 5
POLICE DEPARTMENT
Motion No. 001

NYSCEF Doc. No. 19, ¶ 5.

Respondent alleges that "doxing" of police officers (posting personal addresses and telephone numbers on the Internet) is increasing, and that in "several of these cases, there were social media comments advocating for violence against these officers at their residences." NYSCEF Doc. No. 19, ¶ 7.

And in the same vein as her comrades, Cecilia Luckie, a Detective Squad Sergeant and the Detective Bureau's Undercover Coordinator, testifies that "disclosure would constitute a danger to the life and safety of these" officers, "as it would reveal their identities to the public, including to the subjects of their investigations"; "would also interfere with or compromise investigations involving undercover officers"; and "would prevent the NYPD from placing current officers who are not currently in an undercover assignment in a future undercover assignment." NYSCEF Doc. No. 20, ¶ 3.

As petitioner is not bound by confidentiality, granting its request would be akin to having a billboard in Times Square posting the photographs, names, and tax identification numbers of every police officer. That just does not sit right with this Court.

Petitioner argues that respondent has failed to preserve the § 87(2)(f) safety exemption for non-undercover officers. NYSCEF Doc. No. 24, at 3-4. That claim is problematic. Both sides have vociferously argued for and against a safety exemption for all officers. In any event, sometimes non-prejudicial technical procedure must defer to significant practical reality.

Petitioners also argue that a FOIL denial cannot be based on "speculation." Id. at 4. However, it can be based on "possibility." Where is the line between the two? On which side of the line does the instant situation fall? This Court finds that harm to officers and their families is a distinct "possibility," based on the opinion of the aforesaid officers, the facts they have presented, and the contentious, and often violent, tenor of our times.

That the NYPD has voluntarily and intentionally put the photographs and names of numerous officers on social media is not a waiver of the right of other officers not to be publicly displayed. To the extent that civil actions cannot be brought against unidentified officers, pre-action disclosure may help ameliorate this problem.

The Final Analysis

In the final analysis, this Court must balance the significant benefits of disclosure, those being transparency in general and the holding of miscreant officers responsible for their bad acts in particular, against the significant benefits of concealment, those being the safety of police officers and their families and the ability of the NYPD to conduct its operations, including internal investigations, unimpeded. The New York Times Co. v City of New York Fire Dept., 4 NY3d 477, 487 (2005) (Courts must balance public interest with the interest of privacy in granting FOIL requests). Here, this Court finds that respondent has met its burden of demonstrating the possibility of harm to officers and/or their families if the requested information is disclosed.

156944/2024  THE LEGAL AID SOCIETY vs. RECORDS ACCESS OFFICER, NEW YORK CITY          Page 4 of 5
POLICE DEPARTMENT
Motion No. 001

[* 4]                                                4 of 5

Letting some officers escape accountability for bad acts, which is obviously regrettable, is a significant but reasonable price to pay for keeping all officers safe, which is clearly desirable.

Perhaps Police officers should be required to wear larger name tags, and/or be highly penalized for attempting to obscure their nametags and/or for refusing to identify themselves when asked to do so. See New York City Administrative Code § 14-174.

Conclusion

Although courts generally frown on blanket denials of FOIL requests, here, this Court is unsure, based on the record before it, how to tailor petitioner's request so that it includes material that should be disclosed, but excludes material that would compromise police safety. Rather than attempt to cherry-pick what must be turned over and what need not be, the Court hereby denies the instant petition in full, without prejudice, in the hope that petitioner will submit a more narrowly-tailored, narrowly-targeted FOIL request and/or negotiates further with respondent, in light of today's opinion, and with the Court's assistance if both sides think that that might help.

Petition denied, without prejudice to a re-drawn FOIL request.

HON. ARTHUR F. ENGORON, J.S.C.

---

**3/26/2025**
DATE

ARTHUR F. ENGORON, J.S.C.

CHECK ONE:  [X] CASE DISPOSED   [ ] NON-FINAL DISPOSITION

[ ] GRANTED  [X] DENIED   [ ] GRANTED IN PART   [ ] OTHER

APPLICATION:  [ ] SETTLE ORDER   [ ] SUBMIT ORDER

CHECK IF APPROPRIATE:  [ ] INCLUDES TRANSFER/REASSIGN   [ ] FIDUCIARY APPOINTMENT   [ ] REFERENCE

156944/2024   THE LEGAL AID SOCIETY vs. RECORDS ACCESS OFFICER, NEW YORK CITY POLICE DEPARTMENT
Motion No. 001

Page 5 of 5

5 of 5