OPINION OF THE COURT
Alice Schlesinger, J.
This proceeding arises from the July 17, 2014 incident in Staten Island which resulted in the death of Eric Garner.
Petitioner Justine Luongo, the Attorney-in-Chief of Legal Aid Society’s criminal defense practice, seeks an order pursuant to article 78 of the CPLR directing the respondent Records Access *710 Officer of the New York Civilian Complaint Review Board (CCRB) to provide a summary of its records regarding Officer Daniel Pantaleo indicating: (a) the number of substantiated complaints brought against him to CCRB before the Garner incident; and (b) any CCRB recommendations made to the New York City Police Department (NYPD) based on such substantiated complaints.[1] Pantaleo is the officer in the green jersey depicted in the highly-publicized video of Garner’s arrest who engaged Garner from behind and brought him to the ground.
On December 18, 2014, petitioner submitted her request to CCRB pursuant to Public Officers Law §§ 84 through 90, which is also known as the Freedom of Information Law (FOIL).[2] FOIL allows members of the public to access records of governmental agencies, subject to certain restrictions, some of which are at issue in this matter and discussed below. Also discussed in more detail below are petitioner’s reasons for seeking the summary. In short, petitioner seeks the summary as part of Legal Aid’s effort to engage in a discussion with the NYPD to improve its investigative and disciplinary systems.
According to its website, CCRB is an “independent city agency, with subpoena power,” that is “not part of the police department.” CCRB’s mission statement provides that it is “empowered to receive, investigate, mediate, hear, make findings, and recommend action on complaints against New York City police officers alleging the use of excessive or unnecessary force, abuse of authority, discourtesy, or the use of offensive language.” Thus, CCRB’s investigative staff, which is composed entirely of civilian employees, “conducts investigations in an impartial fashion” and “forwards its findings to the police commissioner.”
In any event, CCRB denied petitioner’s request. In its denial letter, it first cited Public Officers Law § 87 (2) (a), which permits agencies to deny access to records when they are “specifically exempted from disclosure by state or federal stat *711 ute.” CCRB then cited Civil Rights Law § 50-a (1), which provides that “[a]ll personnel records used to evaluate performance toward continued employment or promotion” of a police officer are exempt from disclosure absent the express written consent of such police officer, or “as may be mandated by lawful court order.”
Following C CRB’s failure to respond to petitioner’s subsequent appeal of the denial,[3] the instant article 78 proceeding ensued. The proceeding was originally brought only against CCRB. However, the court granted Pantaleo’s application to intervene, given his status as a necessary party and obvious interest in the outcome of this matter.
As detailed further below, this court finds that disclosure is warranted on two separate grounds. First, respondents fail to meet their initial burden of showing that the summary constitutes a “personnel record” under Civil Rights Law § 50-a. Second, even assuming the summary is such a record, the essential question under Civil Rights Law § 50-a, as established by the Court of Appeals in Matter of Daily Gazette Co. v City of Schenectady (93 NY2d 145, 159 [1999]), is whether the agency seeking to avoid disclosure of the personnel record demonstrates a “substantial and realistic potential of the requested material for the abusive use against the officer.” Given the unique facts and background of this matter (particularly the existence, and wide dissemination, of the video of the incident), and the limited nature of petitioner’s request, this court finds that respondents fail to demonstrate this potential.
Arguments
Petitioner argues that the existence of prior civilian complaints and prosecutions is a matter of public concern. She also contends that there are no concerns about an invasion of privacy regarding Pantaleo’s identity if the summary is released; his role in the incident has already been widely noted in the media’s extensive coverage of the incident. Petitioner further focuses on the nature of her request, which is narrowly tailored to elicit only whether Pantaleo had a history of substantiated complaints, and what CCRB did in response to those complaints.
*712 Petitioner avers that she seeks the summary to “evaluate potential weaknesses in and recommend improvements concerning the City’s police investigation and disciplinary system” and to obtain insights as to “whether the systems of police oversight, accountability and discipline in New York City failed to prevent Mr. Garner’s death by failing to deter an officer with a history of excessive force.” (Petition f 28.) In other words, petitioner desires to “inform public discussion about the city’s police oversight, accountability and disciplinary systems.” (Petition f 33.)
In opposition, CCRB states that petitioner seeks “a police officer’s disciplinary history, a class of documents that is indisputably exempt from disclosure.” (CCRB mem of law at 1.) CCRB also cites Telesford v Patterson (27 AD3d 328 [1st Dept 2006]) for the proposition that CCRB records are “personnel records” exempt from disclosure per Civil Rights Law § 50-a.[4]
CCRB contends that the summary is “inherently stigmatizing and subject to abuse.” (CCRB mem of law at 7.) In other words, to CCRB, disclosure “bears enormous potential to stigmatize an officer, the paramount concern of the legislature in enacting [Civil Rights Law § 50-a].” (CCRB mem of law at 8.) CCRB argues it is absurd to suggest that, in the context of a high-profile wrongful death case, Pantaleo would not be subject to harassment or public humiliation based on the release of the summary. In this regard, CCRB argues that the information at issue is not “neutral and [does] . . . contain invidious implications capable facially of harassment or degradation of the officer in a courtroom.” (Daily Gazette, 93 NY2d at 158.)
Pantaleo, who is represented by counsel, argues that petitioner’s purported desired use of the summary is of no moment. Rather, the potential abusive exploitation of the records must guide the court here. Furthermore, Pantaleo argues that he has already been subjected to actual (and not simply potential or theoretical) harm from the release of certain CCRB records. He points to a website called silive.com, which published an Internet article that quoted a CCRB investigation of alleged improper conduct against Pantaleo. However, Pantaleo did not consent to or have any notice of the release of that CCRB record, and all allegations against him referenced in *713 that record were ultimately unsubstantiated. Pantaleo then points to a January 2015 incident in which a grand jury indicted a Michigan man for threatening (on Facebook) to behead him. He further claims that based on the above and release of CCRB records, the NYPD’s Threat Assessment Unit has deemed it necessary to station a marked police car containing two officers outside of his home and the home of some of his family members, 24 hours a day, seven days a week. This unit has also installed video surveillance cameras and panic buttons at Pantaleo’s home, and he has been assigned a police radio to call for assistance, if necessary.
In reply, petitioner argues that CCRB conflated her request for a summary of CCRB records with a request for the actual records themselves. In petitioner’s view, the summary is not a “personnel record” as contemplated by Civil Rights Law § 50-a. Petitioner further notes that CCRB had, on prior occasions, provided such summaries to Legal Aid up until September 2014. Petitioner attaches an example of one such summary.
As to Pantaleo’s claim that threats to his well-being were caused by the previously released report about the CCRB investigation, petitioner argues there is no evidence establishing a causal connection between that unsubstantiated complaint mentioned in the report and any threats made to Pantaleo. Petitioner suggests that the video of the incident more likely led to the threats, and the NYPD’s decision to provide Pantaleo with supplemental security measures.
In any event, in her reply to Pantaleo’s submission, petitioner clarifies that she has “narrowed the request to only a numerical report on how many prior substantiated CCRB complaints existed before Mr. Garner’s death, plus any recommendations for administrative prosecution and/or penalty.” (Petitioner’s reply at 3.) And, to provide an example of how this request is tailored to respect the legislative intent of Civil Rights Law § 50-a, petitioner notes that the CCRB complaint described by respondents in the silive.com article would not be included, since that complaint was not substantiated.
Summary of Relevant Law
Article 78 of the CPLR establishes the procedure for challenging determinations of administrative agencies, public bodies or officers (see CPLR 7802 [a]).
FOIL “imposes a broad duty on government to make its records available to the public.” (Matter of Gould v New York *714 City Police Dept., 89 NY2d 267, 274 [1996].) And, generally, “access to government records does not depend on the purpose for which the records are sought.” (Id.) Under FOIL, government records are therefore presumptively open for public inspection unless they fall within one of the exceptions specified by Public Officers Law § 87 (2), which permits an agency to deny access to records which are “specifically exempted from disclosure by state or federal statute.” (Public Officers Law § 87 [2] [a].)
There is one such “state or federal statute” at issue: Civil Rights Law § 50-a. As noted above, this statute provides that “personnel records” used to evaluate performance toward continued employment or promotion of police officers shall generally be deemed confidential and are not subject to inspection or review.
Thus, the court has at least one, and possibly two, questions to answer.
The first question, which this court must determine, is whether the summary is a “personnel record” within the statute. CCRB acknowledges that it “has the initial burden of showing that the subject documents are personnel records, used to evaluate the performance of police officers and their eligibility to continue in their employment or be promoted, and are therefore covered by [Civil Rights Law § ] 50-a.” (CCRB mem of law at 6; see also Daily Gazette, 93 NY2d at 158-159 [“As with all statutory exceptions to FOIL disclosure of governmental agency records, the agency or other party opposing disclosure of officers’ personnel records carries the burden of demonstrating that the requested information falls squarely within the exemption”].)
Thus, if the court finds that respondents fail to show that the summary is a Civil Rights Law § 50-a personnel record, the inquiry ends, and pursuant to FOIL, disclosure is warranted.
If, on the other hand, respondents demonstrate that the summary is in fact a Civil Rights Law § 50-a personnel record, although the presumption would be that it is exempt from disclosure, the court would still have to determine whether an exception exists mandating disclosure. Thus, when Civil Rights Law § 50-a applies, the party seeking disclosure has the initial burden to demonstrate in good faith, “some factual predicate” warranting the intrusion into the personnel records of the officer. (Telesford v Patterson, 27 AD3d 328, 330 [1st Dept 2006], citing Taran v State of New York, 140 AD2d 429, 432 [2d Dept *715 1988].) Once this occurs, the court shall render a decision in accordance with the precept that “nondisclosure will be limited to the extent reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a — to prevent the potential use of information in the records in litigation to degrade, embarrass, harass or impeach the integrity of the officer.” (Daily Gazette, 93 NY2d at 157-158.)
Discussion
As noted above, the court finds that respondents have failed to meet their burden to show that the summary is a personnel record as defined in Civil Rights Law § 50-a.
Contrary to respondents’ contentions, the First Department has not held that CCRB records — or more importantly, a summary of CCRB records — are “personnel records” under Civil Rights Law § 50-a. Neither has the Court of Appeals. Moreover, petitioner does not, as respondents claim, concede that the summary falls within the statute. (Petitioner’s reply at 3 [“The Court should not extend the definition of ‘personnel record’ under (Civil Rights Law §) 50-a to include the most cursory summary of CCRB investigations and actions regarding on-duty conduct by Officer Pantaleo”].)
Telesford, the First Department decision cited by respondents for this proposition, did not resolve this issue. In Telesford, the petitioner, an inmate at an upstate correctional facility, requested that CCRB produce an audiotape of an interview conducted by CCRB with a police officer against whom petitioner had filed an excessive force complaint. His complaint pertained to the arrest which led to his conviction for which he was incarcerated. CCRB initially denied the request on the ground that the audiotape was part of an investigative file concerning the officer and could not be disclosed without the officer’s consent or by court order. In the underlying article 78 proceeding, the trial court directed CCRB to provide the audiotape for an in camera inspection, based on its finding that petitioner adequately demonstrated the tape was related to the incident in question, and was necessary to petitioner for his appeal of his criminal conviction. As to the officer, although he was not a party to the proceeding, the trial court determined that he had been on notice of the petition (notice had been given to the FOIL appeals officer of CCRB), but waived his right to a full hearing. (Telesford v Patterson, 27 AD3d 328 [1st Dept 2006].)
The First Department reversed the trial court. Although the First Department noted that the trial court found that CCRB *716 records fall within the ambit of Civil Rights Law § 50-a, it did not explicitly affirm this finding, much less make such a finding with respect to a restricted summary of CCRB records. More importantly, its holding only pertained to the issues of notice to the officer (which it found was lacking), and his status as a necessary party to the action.[5] (Telesford, 27 AD3d at 329-330.)
Accordingly, this court finds that respondents have therefore failed to meet their burden to establish that the summary, which would be generated by CCRB — a city agency independent of the NYPD — is a personnel record under Civil Rights Law § 50-a. Thus, under FOIL, this court orders disclosure of the summary.
Furthermore, even assuming that the summary is such a “personnel record,” under the controlling Court of Appeals decisions of Daily Gazette, Prisoners’ Legal Servs., and Matter of Capital Newspapers Div. of Hearst Corp. v Burns (67 NY2d 562 [1986]), disclosure is still warranted.
In Daily Gazette, petitioners were two local newspapers which covered events in the Schenectady area. The incident underlying petitioners’ FOIL request occurred when a chartered busload of off-duty Schenectady officers celebrating a bachelor party had an incident with civilians in a different automobile wherein certain of the officers pelted the civilians’ vehicle with raw eggs. Following the incident, the Schenectady Chief of Police confirmed that the incident occurred and that 18 officers, who admitted their participation in the incident, were disciplined in varying degrees. Petitioners then made FOIL requests to the Schenectady Police Department for “all documents related to disciplinary actions” or the identities of the sanctioned *717 officers and the specific punishment imposed upon each. The Police Department denied petitioners’ request pursuant to Civil Rights Law § 50-a. (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 152 [1999].)
In finding that petitioners’ identity and purpose for making the FOIL request was not dispositive of the matter, the Court of Appeals held that
“when access to an officer’s personnel records relevant to promotion or continued employment is sought under FOIL, nondisclosure will be limited to the extent reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a — to prevent the potential use of information in the records in litigation to degrade, embarrass, harass or impeach the integrity of the officer.” (Daily Gazette, 93 NY2d at 157-158.)
On a related note, the Court held that “the agency [opposing disclosure] must demonstrate a substantial and realistic potential of the requested material for the abusive use against the officer.” (Id. at 159.)
At the same time, however, the Court noted that “in a close case, the status and purpose of the applicant may have some relevancy in determining the risk of oppressive utilization of the materials sought,” and that disclosure for uses that would respect the legislative intent of Civil Rights Law § 50-a “could he attained either by a restrictive formulation of the FOIL request itself, or through redaction by the agency having custody of the records, tailored in either case so as to preclude use in personal attacks against an officer.” (Daily Gazette, 93 NY2d at 159.)
In any event, the Court ultimately denied petitioners’ request, finding that because petitioners sought “comprehensive access to all records of the disciplinary action taken against the 18 police officers, including their identities and individual punishments, for possibly very serious misconduct,” the request itself demonstrated the risk of its use to embarrass or humiliate the officers involved. (Daily Gazette, 93 NY2d at 159.)
In Daily Gazette, the Court recognized the interplay among two of its prior decisions on this issue, Prisoners’ Legal Servs. and Capital Newspapers. These decisions’ respective underlying facts are significantly different and therefore insightful so as to provide further guidance to this court in the present matter.
*718 In Prisoners’ Legal Servs., the petitioner, a legal services group representing incarcerated, individuals, requested access to certain inmates’ grievances and agency decisions pertaining to a certain corrections officer at the Fishkill Correctional Facility after receiving numerous complaints from prisoners about her conduct. (Matter of Prisoners’ Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d 26 [1988].) The Court ultimately denied petitioner’s request based on the risk of harassment and embarrassment to the subject officer, and found that such documents, pertaining to misconduct or rules violations, were the sort of records which the legislature intended to keep confidential. (Id. at 31.)
In Capital Newspapers, the petitioner, a newspaper reporter, sought access to records of the Albany Police Department regarding the number of days and dates on which certain officers were absent from their scheduled employment, based on information that led him to believe that those officers had been abusing their sick leave privileges. (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562 [1986].) The Court ordered disclosure because the records at issue pertained only to one month of dates, were neutral and did not contain any implications capable facially of harassment of the officers in litigation. (Id.)
This court, in its opinion, believes the facts of this matter are closer to those in Capital Newspapers than those in Daily Gazette and Prisoners’ Legal Servs. In the latter cases, the petitioners sought complete records related to the investigation and discipline of police officers. In Capital Newspapers and in the present case, the petitioners sought/seek limited records which do not give rise to the risks contemplated by the legislature and articulated in the Court of Appeals’ decisions.
Petitioners clearly meet their initial burden. The summary, as requested, will provide only the most rudimentary of information: the number of substantiated complaints against Pantaleo, and what was the follow-up, if any, by CCRB to substantiated complaints. Most importantly, the summary will not provide any detail as to what the complaints pertain to, and/or what the underlying events which triggered such complaints even were. And, by the summary’s own limited scope, only substantiated complaints will be referenced.
Furthermore, this court is particularly persuaded by the fact that CCRB has voluntarily provided such summaries to Legal Aid in the past. Thus, CCRB has on prior occasions determined *719 that the release of this type of summary would not run afoul of Civil Rights Law § 50-a. Given the specific facts of this matter, and the tailored request at stake, the court is not convinced that the release of the summary as defined herein is likely to create any risk of harm to Mr. Pantaleo. On this note, the court is unable to find a connection between the July 2014 article’s reference to an unsubstantiated CCRB complaint, and a death threat made, without any reference to that complaint, six months later.
While it is not this court’s role to pass judgment on Mr. Pantaleo’s actions, it is for this court to opine as to the causes of any backlash that he has encountered, and any backlash that he could encounter in the future. This is because this proceeding is not about the validity or invalidity of Mr. Pantaleo’s actions on July 17, 2014; it is about whether the release of the summary could harm him going forward. Naturally, then, the court must render an opinion as to why Mr. Pantaleo suffered harm in the period following the incident leading up to the present, and why he could suffer harm in the future.
As demonstrated throughout this decision, this court believes that any adverse reactions expressed toward Mr. Pantaleo have their roots in the video of the incident, which speaks for itself, and, thereafter, in the Staten Island grand jury’s subsequent decision not to indict him. Moreover, the court believes that any backlash in response to the release of the summary, while improbable in the first instance, is more likely to be directed at the NYPD, which would have received CCRB’s recommendations, than at Pantaleo.
In sum, the court finds that respondents have failed to meet their burden to show that Civil Rights Law § 50-a is even applicable to the summary; assuming arguendo it were, the summary’s release is unlikely to cause any harm to Pantaleo as contemplated by section 50-a.[6]
Accordingly, it is hereby ordered and adjudged that the petition filed in this matter is granted to the extent that respondent CCRB shall serve a copy of the requested summary in accordance with the court’s memorandum decision. The Clerk *720 shall enter judgment in petitioner’s favor accordingly without costs or disbursements.

. The court will hereinafter refer to petitioner’s requested summary as defined in this paragraph as the summary.

. Petitioner’s original request sought the number of complaints filed against Pantaleo; the number of allegations contained within each complaint; the outcome of each allegation investigation; any prosecution by CCRB in response to that finding, if any; the outcome of any such prosecution; any charges and specifications filed by the Department Advocate’s Office; the outcome of any Department Advocate’s Office proceedings; and any other agency actions in response to the findings above. However, during the litigation, petitioner modified her request as noted above.

. As petitioner notes, an agency’s failure to respond to an appeal within a reasonable time constitutes a presumptive denial. (See e.g. Matter of Floyd v McGuire, 87 AD2d 388 [1st Dept 1982].) In any event, respondents do not assert a defense of failure to exhaust administrative remedies.

. CCRB also relies heavily on the Court of Appeals decision Matter of Prisoners’ Legal Servs. of N.Y. v New York State Dept. of Correctional Servs. (73 NY2d 26 [1988]), which is discussed below.

. Although the Second Department has found that a “Citizen Complaint Summary” held by the Legal Bureau of the Nassau County Police Department is a personnel record under Civil Rights Law § 50-a (see Matter of Cook v Nassau County Police Dept., 110 AD3d 718 [2d Dept 2013]), there are obvious differences between that document and the requested summary at issue. Namely, the summary in Cook was, as the Second Department noted, an “internal investigation report.” Moreover, it was held by the police department directly (as opposed to CCRB, an independent city agency not part of the NYPD). Thus, and given that Cook was decided in the Second Department, this court does not feel bound by Cook to find that the requested summary here is a “personnel record.”
In any event, although the Second Department in Cook found that the summary was a personnel record, it found that disclosure was nevertheless warranted since it did not contain any implications capable facially of harassment or degradation of the officer in a courtroom.

. The court denies petitioner’s request for costs and attorneys’ fees, as petitioner did not present any specific argumentation in support of her request, and finds that, although respondents’ position is ultimately unavailing, it had merit.