OPINION OF THE COURT
Bernard J. Graham, J.
Petitioner Hughes Hubbard & Reed LLP moves for a judgment, pursuant to article 78 of the CPLR, directing the Civilian Complaint Review Board (CCRB) and Louis Scarcella (respondents) to disclose certain records pursuant to the Freedom of Information Law (FOIL). The CCRB moves, pursuant to CPLR 7804 (b), 506 (b), and 511 (b), for a change of venue from Kings County to New York County.
Facts and Procedural History
On May 21, 2015, petitioner submitted a FOIL request to the CCRB for “copies of all documents, reports, memoranda, notes, *949 and records maintained or possessed . . . related to [respondent Scarcella],” a retired New York City Police Department (NYPD) detective, “including, but not limited to, any professional disciplinary proceeding related to his work, in any capacity or rank, as a NYPD police officer.” Specifically, petitioner sought the following:
1. the number of complaints filed against the officer;
2. the number of allegations contained within each complaint;
3. the specific allegations contained within each complaint;
4. the outcome of each investigation;
5. any prosecution by the CCRB or its predecessor agency;
6. the outcome of any prosecution by the CCRB or its predecessor agency;
7. any charges and specifications filed by the NYPD’s Department Advocate’s Office or its predecessor agency;
8. the outcome of any proceedings by the Department Advocate’s Office or its predecessor agency; and
9. any other actions by a New York City agency in response to findings above, if any.[1]
Petitioner requested these documents on behalf of its client who was a defendant in a case investigated by Detective Scar-cella. At that time, petitioner and The Legal Aid Society, also representing petitioner’s client, planned to file a motion to vacate their client’s conviction and sought complaints made to the CCRB about the Detective as further evidence of the Detective’s “pattern and practice of misconduct.”[2]
By letter dated June 5, 2015, the CCRB denied petitioner’s request based upon Public Officers Law § 87 (2) (a), “which permits agencies to deny access to records when they are *950 ‘specifically exempted from disclosure by state or federal statute/ ” and Civil Rights Law § 50-a (1), which provides that
“[a] 11 personnel records used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer . . . except as may be mandated by lawful court order.”
In this regard, the CCRB explained that
“[c]ourts have routinely and specifically held that CCRB records — which by their very nature are used to evaluate police officer performance — are restricted by Civil Rights Law § 50-a. See Telesford v Patterson, 27 AD3d 328 (1st Dept. 2006) (dismissing Article 78 petition seeking CCRB records pursuant to Freedom of Information Law). Also, I would note that, to the extent your request seeks records concerning any matters that were not substantiated, any such requests would also represent an unreasonable invasion of privacy.”
By letter dated June 17, 2015, petitioner appealed the denial, arguing that the exemption was inapplicable to retired police officers, and that the CCRB did not create or maintain personnel records for NYPD officers.
By letter dated July 23, 2015, the CCRB denied the appeal, asserting as a threshold matter that it was “not in possession of records or any information responsive to requests numbered (8) and (9).” It further stated that
“[c]oncerning the request for documents related to specific CCRB allegations and outcomes, the law clearly prohibits their disclosure under these circumstances. Although the statute itself doesn’t give a comprehensive definition of ‘personnel records,’ the First Department has clarified this issue with respect to CCRB records. Telesford v Patterson, 27 AD3d 328 (2006-1st Dept.) (CCRB records held to be police personnel records under 50-a). As explained in the denial of your request, the records you seek are specifically protected under 50-a. Disclosure of the records you seek would constitute an acute and unreasonable invasion of privacy, a circumstance not mitigated by Det. Scarcella’s retirement.”
*951 Subsequently, petitioner commenced this proceeding, seeking disclosure of the records indicated above.
On or about October 28, 2015, the CCRB served a demand to change venue to New York County, based upon CPLR 7804 (b), 506 (b), and 511 (b). On or about October 30, 2015, petitioner served an affirmation of proper venue in opposition, arguing that the material events took place in Kings County because Detective Scarcella spent the bulk of his 25-year career with the NYPD there and that, upon information and belief, the Detective’s actions that gave rise to the complaints against him occurred in Kings County. Thereafter, the CCRB moved to change venue to New York County, which petitioner opposed. The petition and motion are presently before the court for disposition.
Discussion
Venue
CPLR 7804 (b) provides that “[a] proceeding under this article shall be brought in the supreme court in the county specified in subdivision (b) of section 506 except as that subdivision otherwise provides.” As relevant here, CPLR 506 (b) provides that
“A proceeding against a body or officer shall be commenced in any county within the judicial district where the respondent made the determination complained of or refused to perform the duty specifically enjoined upon him by law, or where the proceedings were brought or taken in the course of which the matter sought to be restrained originated, or where the material events otherwise took place, or where the principal office of the respondent is located” (emphasis added).
In support of its motion to change venue, the CCRB argues that petitioner’s asserted bases for venue, namely that Detective Scarcella spent the bulk of his career working in Brooklyn police precincts, and that those precincts purportedly contain his disciplinary records, are not dispositive because petitioner is seeking records relating to the investigation of those events, which would have been performed in CCRB’s main office in New York County; that because petitioner is not seeking records from the Police Department, the location of his personnel records held by the NYPD is not germane; that the CCRB has *952 always been located in New-York County; and that Detective Scarcella has been retired for 17 years, undermining his connection to Kings County.
“In order to prevail on a motion pursuant to CPLR 510 (1) to change venue, a [respondent] must show that the [petitioner’s] choice of venue is improper, and also that the [respondent’s] choice of venue is proper” (Deas v Ahmed, 120 AD3d 750, 750-751 [2014]). As an initial matter, the motion is untimely. Pursuant to CPLR 511 (b), the CCRB was required to move for a change of venue “within fifteen days after service of the demand.” Here, the CCRB served its demand for a change of venue on October 26, 2015, but moved for a change of venue on November 20, 2015, 25 days after service of the demand. In any event, as petitioner argues, venue is proper under CPLR 506 (b), i.e., “where the material events otherwise took place,” and the CCRB has failed to demonstrate that the actions which gave rise to the civilian complaints against Detective Scarcella did not occur in Kings County. As noted above, Detective Scarcella spent over 22 years of his career there. Moreover, contrary to the CCRB’s contention, petitioner did not argue that venue was proper because Detective Scar-cella’s disciplinary records were housed in Brooklyn police precincts. In addition, that Detective Scarcella has been retired for 17 years does not lessen his connection to Kings County— the material events underlying the civilian complaints asserted against Detective Scarcella likely took place in Kings County despite the passage of time (see Matter of Diaz v Dennison, 16 Misc 3d 1103[A], 2007 NY Slip Op 51240[U], *4-5 [Sup Ct, Kings County 2007] [venue proper in county where the petitioner’s sentencing and the issuance of a commitment order took place more than six years earlier]). In any event, as petitioner argues, the investigations by the CCRB in New York County would have also occurred years ago. Finally, while it appears that venue also lies properly in New York County based upon the CCRB’s office there, the bases for proper venue under CPLR 506 (b) are alternate options, and thus venue was properly placed in this county “where the material events otherwise took place” (CPLR 506 [b]; see Flash Sec. Servs. v City of New York, 36 Misc 3d 1213[A], 2012 NY Slip Op 51266[U], *1-3 [Sup Ct, NY County 2012]). Accordingly, the motion to change venue is denied.
FOIL Request
“FOIL provides that, with certain exceptions, ‘all records’ of state agencies are subject to public disclosure” (Matter of News *953 day, Inc. v State Dept. of Transp., 5 NY3d 84, 87 [2005], quoting Public Officers Law § 87 [2]). In particular, “[o]ne exception is that an agency need not disclose records that ‘are specifically exempted from disclosure. by state or federal statute’ ” (id., quoting Public Officers Law § 87 [2] [a]). As indicated above, “[o]ne such statute exempting records from disclosure is Civil Rights Law § 50-a (1), which provides, in relevant part, that ‘[a] 11 personnel records used to evaluate performance toward continued employment or promotion’ of police officers ‘shall be considered confidential and not subject to inspection or review’ ” (Matter of Cook v Nassau County Police Dept., 110 AD3d 718, 719-720 [2d Dept 2013], quoting Civil Rights Law § 50-a [1]). “As with all statutory exceptions to FOIL disclosure of governmental agency records, the agency or other party opposing disclosure of officers’ personnel records carries the burden of demonstrating that the requested information falls squarely within the exemption” (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 158-159 [1999]; see also Matter of Jaronczyk v Mangano, 121 AD3d 995, 995-996 [2014]). “To meet that burden, the agency must ‘articulate particularized and specific justification’ for the nondisclosure at issue” (Matter of Villalobos v New York City Fire Dept., 130 AD3d 935, 936 [2d Dept 2015], quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]; see also Matter of Jaronczyk, 121 AD3d at 996). In this regard, “[c]onclusory assertions that certain records fall within a statutory exemption are not sufficient; evidentiary support is needed” (Matter of Jaronczyk, 121 AD3d at 996 [internal quotation marks and citation omitted]). Furthermore,
“[i]n the case of a claim that disclosure is ‘specifically exempted from disclosure by state . . . statute’ ... by reason of Civil Rights Law § 50-a, this means that the agency must demonstrate a substantial and realistic potential of the requested material for the abusive use against the officer or firefighter” (Daily Gazette Co., 93 NY2d at 159, quoting Public Officers Law § 87 [2] [a]).
As a threshold matter, the court must determine whether complaints made to the CCRB constitute “personnel records used to evaluate performance toward continued employment or promotion.” In this regard, “Civil Rights Law § 50-a does not extensively define or qualify what documents constitute ‘personnel records,’ other than requiring that they be under a police agency’s control and be used to evaluate the employee’s *954 performance for continued employment or promotion” (Matter of Capital Newspapers Div. of Hearst Corp. v City of Albany, 63 AD3d 1336, 1337-1338 [3d Dept 2009], affd in part and mod in part 15 NY3d 759 [2010], citing Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]; Matter of Beyah v Goord, 309 AD2d 1049, 1050 [3d Dept 2003]). However, “[t]he Court of Appeals has clarified that personnel records include those documents ‘containing personal, employment-related information about a public employee . . . ; are received, processed and maintained as part of a [public employer’s] operations; and . . . are clearly relied upon in evaluating the employee’s performance’ ” (Matter of Capital Newspapers Div. of Hearst Corp., 63 AD3d at 1338, quoting Matter of Prisoners’ Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d 26, 31 [1988] [citations and internal quotation marks omitted]). Furthermore, “ ‘whether a document qualifies as a personnel record under Civil Rights Law § 50-a (1) depends upon its nature and use in evaluating an officer’s performance’ ” (Matter of Capital Newspapers Div. of Hearst Corp., 63 AD3d at 1338, quoting Matter of Prisoners’ Legal Servs. of N.Y., 73 NY2d at 32). “Documents pertaining to an officer’s misconduct are the type of records specifically intended to be kept confidential under the statute, mainly to prevent use of the records in litigation to harass, embarrass, degrade or impeach an officer’s integrity” (id., citing, inter alia, Matter of Daily Gazette Co., 93 NY2d at 157-158 [“when access to an officer’s personnel records relevant to promotion or continued employment is sought under FOIL, nondisclosure will be limited to the extent reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a — to prevent the potential use of information in the records in litigation to degrade, embarrass, harass or impeach the integrity of the officer”]; Matter of Prisoners’ Legal Servs. of N.Y., 73 NY2d at 31-32).
In support of its petition, petitioner first asserts that respondents’ reliance upon Civil Rights Law § 50-a (1) is inapplicable because Detective Scarcella is retired. In this regard, petitioner emphasizes that Civil Rights Law § 50-a (1) exempts personnel records used to evaluate performance toward continued employment. Petitioner also relies upon the advisory opinions of the New York State Committee on Open Government, which state that
*955 “[w]hen a person has retired or is no longer employed as a police officer, there is no issue involving continued employment or promotion . . . [t]hat being so . . . the rationale for the confidentiality accorded by § 50-a is no longer present, and that statute no longer is applicable or pertinent” (see e.g. Comm on Open Govt FOIL-AO-18308 at 2-3 [2010]).
Petitioner also argues that the requested documents do not constitute “personnel records” under Civil Rights Law § 50-a (1) because they are “created and maintained by the CCRB, an independent city agency that is not affiliated with the NYPD, and which conducts independent investigations into allegations of police misconduct.” Citing Matter of Luongo v Records Access Officer, Civilian Complaint Review Bd. (49 Misc 3d 708 [2015]), petitioner maintains that Telesford (27 AD3d 328 [1st Dept 2006]), upon which the CCRB relied in denying its FOIL request, did not hold that CCRB records were “personnel records” under Civil Rights Law § 50-a, and that even assuming it had, it would have no bearing on this case because Detective Scarcella is retired.
In opposition, respondents argue that under Telesford, CCRB records are exempt from disclosure. Respondents also assert that CCRB files constitute “personnel records” under Civil Rights Law § 50-a (1) because under New York City Charter § 440, civilian complaints about a police officer’s misconduct, if substantiated, are forwarded to the NYPD and prosecuted by the CCRB at the NYPD trial room before the NYPD Deputy Commissioner of Trials, who then refers the matter to the Police Commissioner, who can discipline the officer if warranted. Further, Detective Scarcella refers to the CCRB website, which states, among other things, that “CCRB complaints and discipline are recorded in officers’ personnel records and can affect assignments and promotions.” [3]
Respondents contend that since they have met their initial burden of demonstrating that the records are exempt from disclosure, the burden shifts to petitioner to demonstrate that there is a “clear showing of facts sufficient to warrant the judge to request records for review” (see Civil Rights Law § 50-a [2]), namely petitioner must demonstrate “ ‘in good faith, some *956 factual predicate warranting the intrusion into the personnel records of’ the officer” (Telesford, 27 AD3d at 330, quoting Taran v State of New York, 140 AD2d 429, 432 [2d Dept 1988]), which petitioner failed to do.
Even assuming petitioner has offered a proper factual basis, for its request, respondents argue that the records are exempt from disclosure because “[t]he statute was designed to prevent abusive exploitation of personally damaging information contained in officers’ personnel records,” particularly “for purposes of general cross-examination of a police witness in a criminal prosecution” (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 154 [1999]). In this regard, Detective Scarcella asserts that petitioner hopes to “harass [him] on the witness stand” with “irrevelant information” in the event it obtains a hearing for its client; that he has been “the target of ... a smear campaign in the press,” made up of “sensational allegations designed to sell papers”; and that as a result, convicted defendants are attempting to obtain information in the hopes of having their convictions reversed, but are not entitled to “rummage through personal records on a fishing expedition.” On this same issue, the CCRB argues that while court cross-examination in a criminal prosecution is not likely in this case due to Detective Scarcella’s retirement, the Detective may be subject to other types of abuses (see Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 154 [1999]), such as potential exposure to civil litigation as a result of thé various District Attorney investigations into his prior criminal cases.
Respondents also argue that the Appellate Division, Third Department, has already held that the statute applies to retired officers (Matter of Columbia-Greene Beauty Sch., Inc. v City of Albany, 121 AD3d 1369, 1371 [2014], quoting Matter of Hearst Corp. v New York State Police, 109 AD3d 32 [2013] [“Whether an officer ‘is no longer employed by (an agency) has no bearing upon the question of whether the requested records were or were not used by (that agency) to evaluate his (or her) performance’ ”]). Lastly, respondents contend that Luongo was wrongly decided.
In reply, petitioner argues that respondents have improperly attempted to shift the burden to petitioner to show that the records are “material and relevant” when they, as the parties resisting disclosure, carry the burden of demonstrating that the requested information falls “squarely within a FOIL exemp *957 tion” (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566-567 [1986]). In this regard, with respect to Detective Scarcella’s suggestion that the NYPD uses CCRB records to evaluate continued employment or promotion, petitioner reiterates that the NY City Charter establishes that the CCRB is an independent civilian complaint review board which is not part of the Police Department, that the complaints originate from outside the NYPD, and that the documents sought are created by the CCRB, which does not make decisions about hiring, retention, promotion or demotion of NYPD officers. Specifically, petitioner argues that although the CCRB submits its findings to the NYPD, Detective Scarcella has failed to demonstrate, for example, by submission of a sworn affidavit from the NYPD, that the NYPD relies on CCRB findings in making decisions about continued employment or promotion of police officers. Accordingly, petitioner argues that Detective Scarcella’s conclusory assertion that CCRB files are used to “evaluate performance towards continued employment or promotion” fails to establish that the requested documents are “personnel records” under the statute. Petitioner makes the same argument with respect to the CCRB, namely that the CCRB has also failed to meet its burden of showing that the requested documents are personnel records, having only argued in conclusory fashion that the complaint records, “if substantiated, would be forwarded to the Police Department.” In this regard, petitioner notes that “there is nothing to indicate that the NYPD relied on the [CCRB complaint] records in assessing Detective Scarcella’s employment.”
Even assuming the requested documents are personnel records, petitioner argues that respondents have failed to demonstrate that the documents sought are exempt from disclosure. In this regard, petitioner asserts that given the findings of two Kings County justices that Detective Scarcella engaged in misconduct, which constituted newly discovered evidence sufficient to vacate two defendants’ convictions, the intent of the exemption, namely to protect officers from embarrassment, harassment, or impeachment, is not implicated here. Stated differently, petitioner contends that the documents sought constitute potential substantive evidence of the Detective’s misconduct, as opposed to mere impeachment evidence. Petitioner also asserts that the widely-publicized allegations of Detective Scarcella’s misconduct are hardly a smear campaign designed to sell newspapers given the large- *958 scale investigation of the cases in which he has been involved, several of which have resulted in vacated convictions. Petitioner also contends that its request is not a fishing expedition since Detective Scarcella admitted that 20 civilian complaints had been filed against him while working for the NYPD. Lastly, petitioner notes that the CCRB itself acknowledges that Detective Scarcella “ ‘has garnered some notoriety’ ” given that “ ‘a number of his prior criminal investigations have been the subject of highly critical subsequent review by the District Attorney of Kings County.’ ”
As an initial matter, contrary to petitioner’s claim, the Appellate Division, Third Department, has “expressly ruled that a police officer’s personnel records continue to be exempt from disclosure after he or she departs from public service” (Matter of Columbia-Greene Beauty Sch., Inc., 121 AD3d at 1370-1371; see also Matter of Hearst Corp., 109 AD3d at 35). Thus, petitioner’s argument that the documents sought are discoverable because Detective Scarcella is retired must be rejected. Further, with respect to petitioner’s assertion that the statute is inapplicable because it is only used to evaluate performance toward continued employment, in Matter of Hearst Corp. v New York State Police (109 AD3d at 35), the Court specifically held that “so long as a document was used — at any time during the officer’s employment — to evaluate the officer for promotion or continued employment, it is exempt from disclosure as a personnel record” (emphasis added). Inasmuch as the Third Department’s cases are the only authorities on point with respect to this issue, they are binding authority upon this court (Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984]; Phelps v Phelps, 128 AD3d 1545 [4th Dept 2015]). Notably, petitioner has abandoned this argument in its reply.
Next, the court finds that respondents have satisfied their burden of demonstrating that civilian complaints made to the CCRB constitute “personnel records, used to evaluate performance toward continued employment or promotion.” As a preliminary matter, however, contrary to respondents’ claim, Telesford (27 AD3d 328) did not hold that CCRB complaint records are exempt from disclosure. In this regard, it is true that the Appellate Division noted that the Supreme Court had ultimately granted the petitioner’s FOIL request for production of a CCRB-created audiotape interview of the police officer against whom the petitioner had filed an excessive force complaint. However, the Appellate Division did not affirm this *959 finding. Instead, it reversed the Supreme Court on the grounds that the police officer, as a necessary party, had not been given notice of the proceeding, as required by Civil Rights Law § 50-a (2) (id. at 329-330).
In any event, as noted above, respondents have shown that the exemption under Civil Rights Law § 50-a (1) is applicable to the complaint records. In this regard, respondents represent, and petitioner does not dispute, that complaints from civilians about an officer’s professional conduct, if substantiated, are prosecuted by the CCRB in the NYPD trial room before the NYPD Deputy Commissioner of Trials, who then refers the matter to the Police Commissioner, who can choose to impose discipline upon the officer if he or she finds it warranted. Moreover, the description by respondents regarding the process by which the complaint records are evaluated is supported by New York City Charter § 440 (c) (1), entitled “Powers and duties of the board,” which provides that
“[t]he board shall have the power to receive, investigate, hear, make findings and recommend action upon complaints by members of the public against members of the police department that allege misconduct involving excessive use of force, abuse of authority, discourtesy, or use of offensive language, including . . . sexual orientation and disability. The findings and recommendations of the hoard, and the basis therefore, shall he submitted to the police commissioner “
Further, the page of the CCRB website upon which Detective Scarcella relies, of which the court takes judicial notice (Kingsbrook Jewish Med. Ctr. v Allstate Ins. Co., 61 AD3d 13 [2d Dept 2009]; State Technology Law §§ 305, 306), is also instructive, and supports respondents’ description of the pros-ecutorial arm of the CCRB and its interplay with the NYPD. Entitled “APU [Administration Prosecution Unit] and Police Discipline,” the webpage states, in substance, that under a 2012 memorandum of understanding (MOU), the CCRB and the NYPD agreed to allow the CCRB to prosecute substantiated cases where its Board recommended “charges and specifications,” the most serious discipline. As a result, the webpage states that the CCRB now prosecutes most cases, with limited exceptions, with the Police Commissioner retaining authority to decide the level of punishment. Specifically, the webpage states that
*960 “[t]he trials are held at the police department, before an administrative law judge, known as a Deputy Commissioner for Trials. If an officer is found guilty, punishment can be a warning and admonishment, loss of vacation, suspension without pay, a dismissal probation, or termination from the NYPD. The police commissioner retains the authority to decide the level of punishment” (emphasis added).
The MOU also states that “[the] CCRB shall provide to the NYPD status reports on the prosecution of its cases, quarterly and as otherwise requested by the NYPD” (New York City Civilian Complaint Review Board, Memorandum of Understanding ¶ 18 [Apr. 2012]), and that after the “CCRB administrative prosecution, in all instances other than cases culminating in a report and recommendation by an NYPD Trial Commissioner,” the CCRB forwards to the police commissioner “a final recommendation reflecting the results of its prosecution of the case,” including “all relevant forms, memoranda and background information to assist the Police Commissioner in making a final disciplinary determination” {id. ¶ 19 [emphasis added]).
Further, the CCRB website in fact states that “CCRB complaints and discipline are recorded in officers’ personnel records and can affect assignments and promotions.” Moreover, in the Frequently Asked Questions page of the website, question number 8 asks: “Do complaints remain on an officer’s record? A. Yes, All complaints, regardless of the outcome, remain on an officer’s CCRB history which is part of their personnel record at the police department” (emphasis added). While petitioner concedes that the CCRB submits its findings to the NYPD, it nevertheless argues that respondents have failed to offer any evidence that the NYPD relies upon the CCRB findings in making its disciplinary decisions. However, the web-pages cited above, as well as the MOU, neither of which petitioner addresses, confirm that the complaint records are recorded in and become part of an officers’ personnel records, can affect assignments and promotions, regardless of whether the complaints are substantiated, and are used by the Police Commissioner to aid him or her in making a disciplinary determination.
Inasmuch as CCRB complaint records are “used to determine whether to file disciplinary charges against a police officer for misconduct, and which are in fact used to prosecute the officer if a departmental disciplinary hearing is held,” they “necessarily constitute ‘personnel records, used to evaluate performance *961 toward continued employment or promotion’ within the meaning of subdivision 1 of section 50-a of the Civil Rights Law” (cf. Matter of Gannett Co. v James, 108 Misc 2d 862, 865-866 [1981], affd 86 AD2d 744 [1982], lv denied 56 NY2d 502 [1982], quoting Civil Rights Law § 50-a [1] [where affidavit of police chief outlined and described purpose and significance of an internal affairs complaint against a police officer, and of the resulting investigation, which related to alleged misconduct of a police officer, such complaints, and records compiled by police department, were personnel records under statute]). “Proof that information was generated for the purpose of assessing an employee’s alleged misconduct brings that information within the protection of Civil Rights Law § 50-a (1)” (cf. Matter of Hearst Corp. v New York State Police, 132 AD3d 1128, 1129-1130 [3d Dept 2015] [documents collected or produced in an internal investigation pursuant to statute by state police exempt from disclosure under Civil Rights Law § 50-a (1)], citing, inter alia, Matter of Cook, 110 AD3d at 720, quoting Daily Gazette Co., 93 NY2d at 158 [after in camera review, court found that internal affairs investigation report, except for one-page redacted “Citizen Complaint Summary,” exempt under Civil Rights Law § 50-a (1) — the redacted portion of the internal investigation report did not “ ‘contain any invidious implications capable facially of harassment or degradation of the officer in a courtroom’ ”]). Based upon the foregoing, the court finds that CCRB complaint records “ ‘subject! ] the officer to possible disciplinary sanctions and . . . thus [are] an evaluative tool,’ ” exempting them from disclosure (Matter of Argentieri v Goord, 25 AD3d 830, 832 [3d Dept 2006], quoting Matter of Gannett Co. v James, 86 AD2d 744 [1982], lv denied 56 NY2d 502 [1982]; see Prisoners’ Legal Servs., 73 NY2d at 31).
In light of the foregoing, petitioner’s contention that the records are discoverable because the CCRB does not make decisions about hiring, retention, promotion or demotion of NYPD officers, while true, is irrevelant. Moreover, “ ‘that some [of the] complaints are unfounded and the officers are cleared of any wrongdoing is of no moment’ ” (Matter of Argentieri, 25 AD3d at 832, quoting Gannett, 86 AD2d at 745), because they are used in evaluating the subject officer and become part of the officer’s record even if not substantiated. Further,
“whether a document qualifies as a personnel record under Civil Rights Law § 50-a (1) depends upon its nature and its use in evaluating an officer’s per *962 formance — not its physical location or its particular custodian . . . [and the] applicability of the statute cannot be determined simply on the basis of where the information is stored” (Prisoners’ Legal Servs., 73 NY2d at 32 [citations and internal quotation marks omitted]).
Accordingly, petitioner’s argument that these complaint records cannot be considered personnel records under the statute because they originate from civilians outside the NYPD, and are created by an independent agency, is misplaced.
Luongo (49 Misc 3d 708), upon which petitioner relies, is distinguishable from this case. In Luongo, the petitioner, the Attorney-in-Chief of Legal Aid’s Criminal Defense Practice, made a FOIL request to the CCRB for information about a police officer involved in an incident in which he was videotaped engaging a suspect (Eric Garner) from behind and bringing him down to the ground. Specifically, the petitioner requested the CCRB to provide a summary of its records regarding the officer indicating: the number of substantiated complaints brought against the police officer to the CCRB before the Garner incident and any CCRB recommendations made to the NYPD based on those substantiated complaints (the summary). The CCRB denied the request on the grounds that the summary was exempt under Civil Rights Law § 50-a (1). Following the CCRB’s failure to respond to the petitioner’s appeal, the petitioner commenced an article 78 proceeding seeking the information requested. The court held that the CCRB and the officer involved, also a respondent, had failed to show that the materials were exempt from disclosure, rejecting their reliance upon Telesford for the reasons noted above, and emphasizing that the CCRB was a city agency independent of the NYPD (id. at 715-716). The court also held that even assuming the summary was a personnel record, disclosure was nevertheless warranted under controlling Court of Appeals decisions, essentially because the request was limited and did not give rise to the risks contemplated by the legislature in enacting the statute (id. at 718).
Despite the foregoing, the record before the court in Luongo differs from the record here. Although the court in Luongo noted that the investigative findings of the CCRB would be forwarded to the Police Commissioner, it did not address nor does it appear that the respondents argued, as respondents do here, that based in part upon New York City Charter § 440, an *963 officer’s misconduct, if substantiated, would be tried by an administrative law judge at the NYPD, which matter would then be forwarded to the Police Commissioner to determine if disciplinary action was warranted. Nor does it appear that the respondents in Luongo relied, as the respondents do here, upon that section of the CCRB website which provides that CCRB complaints are recorded in the personnel records of the police officer and can affect their assignments and promotions. Similarly, the MOU does not appear to have been raised by respondents or addressed by the court. Accordingly, Luongo is not controlling here.
Nevertheless, “[i]n order to overcome the confidentiality requirements applicable to the personnel records of police officers, firefighters and certain other civil servants, a two-step process is required” (Matter of Crowe v Kelly, 38 AD3d 435, 437 [1st Dept 2007], lv denied 9 NY3d 801 [2007]). Specifically, “[t]he court to whom such application for disclosure is made must conduct a hearing on the application, giving all interested parties an opportunity to be heard” (id.). “The party requesting disclosure has the initial burden of making ‘a clear showing of facts sufficient to warrant the judge to request records for review’ ” (id., quoting Civil Rights Law § 50-a [2]; see also Flores v City of New York, 207 AD2d 302, 303 [1st Dept 1994]).
As to the first predicate, the parties have submitted complete motion papers in this matter and argument was heard before the undersigned, constituting a hearing in which all parties had an opportunity to be heard. The petitioner has not offered any specific relevant information for this court to produce the CCRB records for review. The petitioner initiated this FOIL request to obtain the CCRB records at a point when its client sought to vacate a criminal conviction in a case which had been investigated by retired Detective Scarcella. Petitioner has informed this court that the conviction of its client has been vacated and the indictment has been dismissed and sealed.[4] Petitioner writes that the exoneration should have no bearing on the substantive issues raised, by petitioner and The Legal Aid Society.
The Legal Aid Society is described as being cocounsel to petitioner, yet, it is not a party to this proceeding nor does the record contain any evidence of its involvement with petitioner’s *964 client or the other 22 defendants which petitioner represents that it and The Legal Aid Society jointly represent, and for whom petitioner seeks the requested records. The only papers which have been submitted to this court have been submitted by petitioner and the petition is premised on assisting its client in obtaining records for the purpose of obtaining his exoneration.
There are no specific facts introduced which point to a nexus of any kind between the convictions of the remaining Legal Aid clients and the actions of Detective Scarcella. While it may be commonly acknowledged that a great deal of negative publicity has been generated as to Detective Scarcella’s employment history with the Police Department and the subsequent exonera-tions of several defendants’ convictions in whose investigations he was involved, this court is being asked to grant an examination of personnel records without any factual predicate indicating whether the records are relevant to the convictions of the undisclosed defendants.
The relief sought in the instant petition would go far beyond those cases which have found exemptions to the disclosure of police and fire department employee records. An exemption of personnel records under Civil Rights Law § 50-a has been permitted when the request has been “neutral” and for a limited purpose involving an examination of overtime and sick leave abuses (see Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562 [1986]). Similarly, in Flores (207 AD2d 302), CCRB records were discoverable in a case involving a police officer in the shooting of a minor as the officer’s prior shootings were potentially relevant to the proceedings in the later shooting, yet the court stressed that the party seeking discovery “is required to 'offer, in good faith, “some factual predicate” warranting the intrusion into the personnel records of [police officers]’ ” (id. at 303, citing Taran v State of New York, 140 AD2d at 432, quoting People v Gissendanner, 48 NY2d 543, 550 [1979]). Finally, the examination of personnel records requires a showing that “[the] . . . records are relevant to the merits of the action and are not sought merely to conduct ‘a fishing expedition to gain information to impeach a witness’s general credibility’ ” (Flores, 207 AD2d at 303, quoting People v Valentine, 160 AD2d 325, 326 [1990], lv denied 76 NY2d 797 [1990]).
As discussed above, in the Luongo case, which petitioner seeks to employ as establishing a broad right to obtain CCRB *965 records, the records sought involved the specific, well-publicized choke hold death of Eric Garner. In that case there was (at least) a context and a rationale for seeking the records which could be understood by the court. Whether or not Luongo was correctly decided, there is a stronger argument in Luongo that the records requested were potentially relevant, and the petition appears to have set forth facts supporting the request. That is not the case in the instant matter.
Assuming petitioner would satisfy the initial step in this inquiry, this court would request the personnel documents for an in camera inspection to determine whether they are relevant and material to the action before the court (see Taran, 140 AD2d at 432). The flaw in the instant motion is that the court has been given no facts to assess whether the records may have relevancy to the circumstances of the defendants who petitioner states are being represented jointly by itself and The Legal Aid Society. To grant the petition under these circumstances would be to tremendously broaden the allowable standard in which police officers, firefighters and correction officers’ personnel records could be made available for examination. A concern of this court is that the risk of embarrassment and ridicule to such officers and firefighters would be greatly increased if the standard to permit examination of such records is lessened to remove requirements of relevancy to essentially forgo the requirement that a factual predicate be presented.
There is also a likelihood that an open-ended examination of records would increase the chances that personnel records would be obtained which would only be applicable to collateral issues and, therefore, not admissible at trial (see Crowe, 38 AD3d at 438, citing Badr v Hogan, 75 NY2d 629, 635 [1990]).
Moreover, notwithstanding that the actions of retired Detective Scarcella may be offensive and even illegal, the exemption to FOIL requests contained in Civil Rights Law § 50-a must be applied in a meaningful, evenhanded manner to prevent “ ‘harassment or reprisals’ against an officer ... or ‘his/her family.’ ” (Daily Gazette, 93 NY2d at 154-155.) In any event, as Daily Gazette held, petitioner was required to show that the material sought “[is] actually relevant to an issue in a pending proceeding” (id. at 155), which petitioner has failed to demonstrate.
*966 Accordingly, the motion for a change of venue is denied and the petition is dismissed.

. Petitioner advises the court by letter dated March 3, 2016 that it mistakenly attached to the petition the FOIL request it made to the NYPD, but has provided the court with the FOIL request it made to the CCRB, which is set forth above.

. It is undisputed that the Kings County District Attorney’s Office is currently reviewing 72 cases Detective Scarcella investigated, and in the past three years, it vacated several convictions in which the Detective was involved, including petitioner’s client, during the course of this litigation. In addition, two Kangs County Supreme Court justices have explicitly held that the Detective engaged in a pattern of misconduct as an NYPD detective, which warranted vacating two of the above-noted convictions. It is also undisputed that Detective Scarcella has recently disclosed in open court that 20 civilian complaints have been filed against him while he was employed by the NYPD.

. In the CCRB’s website under Frequently Asked Questions, question 8 asks: “Do complaints remain on an officer’s record? A. Yes, All complaints, regardless of the outcome, remain on an officer’s CCRB history which is part of their personnel record at the police department” (emphasis added).

. After submission of the motion, the court had been informed by petitioner (see letter of Alexandra M. Shookhoff, Esq., to this court, dated Mar. 3, 2016) that the conviction of petitioner’s client had been vacated.